## COUNTY OF BUTTS *et al. v.* STRAHAN *et al.*

1. Where two acts of the General Assembly are "passed" on the same date, and each of the acts in terms provides that the same shall take effect from and after its passage, and said acts are, within the time-limit prescribed by par. 16, sec. 1 of art. 5 of the constitution (Civil Code, § 6485), approved by the Governor, but on different dates, the act last approved is, in legal contemplation, the last expression of the legislative will upon the subject covered by the act; and if the provisions of the act last approved are irreconcilably opposed to those of the act first approved, the last mentioned must be considered as repealed.

2. Section 20 of the act of the General Assembly approved August 16, 1919 (Ga. Laws 1919, p. 256), known as the motor-vehicle act, which provides for the distribution of the funds arising under and by virtue of that act "among the several counties of this State, according to post-road mileage in each county," is necessarily in direct conflict with section 4 of article 5 of the act approved August 18, 1919 (Ga. Laws 1919, pp. 242, 250), which provides for the annual distribution of the State-aid road-fund "between the twelve congressional districts as now created, and which shall constitute the road districts, according to the designated mileage of each road district as compared to the total mileage of the designated roads in the whole State," to wit, not exceeding 4800 miles, as designated by the State highway department.

3. Accordingly, the court did not err in refusing the prayers of the petition for mandamus.

No. 2340. APRIL 14, 1921.

Petition for mandamus. Before Judge Cobb. Clarke superior court. November 5, 1920.

*E. M. Smith, C. L. Redman, J. H. Hall,* and *W. E. Watkins,* for plaintiffs. *H. J. Quincey,* for defendants.

GEORGE, J. The Counties of Butts, Berrien, Henry, and Haralson filed a petition for the writ of mandamus against the State highway board, seeking to compel the board to distribute the State-aid road-fund in accordance with the provisions of section 20 of the act approved August 16, 1919 (Ga. Laws 1919, p. 256), entitled "An act to amend an act known as 'the Georgia motor-vehicle law,'" etc., hereinafter referred to as the motor-vehicle act. The highway board contended in the court below, and here contends, that the provisions of section 20 of the motor-vehicle act, with reference to the distribution of the State-aid road-fund, are not binding upon the board, but that the board is controlled, with reference to the distribution of said fund, by section 4 of article 5 of the act approved August 18, 1919 (Ga. Laws 1919, p. 242), entitled "An act to reorganize and reconstitute the State Highway Department of Georgia," etc., hereinafter referred to as the State

27

highway law. The case was submitted upon the petition and answer; and to an order and judgment refusing the writ of mandamus the plaintiffs excepted.

The motor-vehicle act and the State highway law were " passed " by the General Assembly on the same date. In terms each act went into effect from and after its passage. The motor-vehicle act was approved by the Governor on August 16, 1919. The State highway law was approved by the Governor on August 18, 1919. In the case of *Floyd County* v. *Salmon,* 151 *Ga.* 313 (106 S. E. 280), this court said: " With respect to the time when statutes are to take effect, the old English rule was that if the act was not directed to operate from any particular time, it took effect from the first day of the session at which it was passed. This legal fiction and this extraordinary application of the doctrine of relation was acted upon by the English courts until the statute of 33 Geo. III, c. 13, which statute declared that laws shall operate from the time of receiving the royal assent. Sedgwick on Construction of Statutes (2d ed.), 65. 'Under constitutions which, by providing in effect that no bill shall become a law until it shall have received the approval of the chief executive or shall have been passed over his refusal to approve, make the executive a necessary constituent of the lawmaking power, an act becomes a law, not when it is passed by the two houses of the legislature, but when it is approved by the executive, unless it becomes a law by the lapse of time specified for the return of a bill to the legislature or by being passed by the legislature notwithstanding the disapproval of the executive.' 25 R. C. L. 797; cf. art. 5, § 1, par. 16, of the constitution of this State (Civil Code, § 6485) ; *Green* v. *Hall,* 36 *Ga.* 538; *Epstein* v. *Levenson,* 79 *Ga.* 718 (2), 719 (4 S. E. 328). The general rule followed in the United States is, that, in the absence of constitutional or general statutory provision governing the matter, the statute becomes effective on the day of its passage, that is to say, on the day of its approval by the chief executive, or its passage over his veto, or by his non-action within the time specified in the constitution for the return of the bill to the legislature, unless the time for the going into effect of the statute is fixed by the statute itself." It is elementary that " when the provisions of a later statute are opposed to those of an earlier, the last mentioned must be considered as repealed." *Harrison* v. *Walker,* 1 *Ga.* 32; *Staten* v. *State,* 141 *Ga.* 82 (80 S. E. 850).

In *Wright* v. *Overstreet,* 122 *Ga.* 633 (50 S. E. 487), this court held: " As a general rule, acts of the General Assembly take effect from the date of their approval by the Governor; and where two bills were passed by the legislature, one dependent for its validity upon the prior enactment of the other, it is immaterial in what order they were introduced or put upon their final passage, so long as executive approval of the two bills was had in such an order of priority as to make them both effective." It is likewise elementary that the doctrine of implied repeal is 'not favored, that is to say, repeals by implication are not favored.   Article 7 of the State highway law, the act last approved by the Governor, provides that " Nothing herein contained shall repeal any criminal law with reference to highways, or the rights or duties of the public with reference thereto; nor shall this act repeal any other provisions of law whatever except such as are necessarily in direct conflict herewith." Though intended to emphasize the general principle, article 7 quoted above is simply declaratory of the settled rule of construction.   If there is an irreconcilable repugnancy between the motor-vehicle act and the State highway law, with reference to the distribution of the State-aid road-fund, the provisions of the State highway law, the act last approved by the Governor, must control.

Section 20 of the motor-vehicle act provided that the fees collected under the act should be turned into the State treasury by the secretary of State, and that the State treasurer should set aside from the fees a sum provided as available for expenses, the act providing further that fifteen per cent. of the total revenue derived under its provisions might be used to defray expenses. It was then provided: " The remainder of said funds arising under and by virtue of this act shall be distributed each year by the State Highway Commission among the several counties of this State, according to post-road mileage in each county, and spent by said Highway Commission in the building, repairing, and maintaining public roads in each county until December 31, 1920, at which time said State Highway Commission shall apply said fund to liquidate the bonded indebtedness of said State created to support and build roads therein, and pay the interest on same; but should no such bonded indebtedness be so created, then said State Highway Commission shall continue to distribute said funds among the several counties as aforesaid, and apply the same as aforesaid,

until said bonds are authorized." No bonds have been issued by the State; hence the provision is to be construed as requiring the distribution among the counties in the manner indicated. Art. 4, sec. 1, of the State highway law (Ga. L. 1919, p. 247) provides for a system of State-aid roads in this State, for the purpose of interconnecting the several county-seats of the State, "which shall be designated, constructed, improved, and maintained by the State under the State Highway Department, and the provisions of law; and that the term State-aid roads shall include the State or interstate bridges and other subsidiary structures necessary or desirable in the contruction of said roads." Section 2 of article 4 (p. 247) created "a State-aid road-fund, to be controlled and expended by the State Highway Board as herein provided for, and that said fund shall consist of such moneys as are provided for herein, and as may from time to time be appropriated or provided for road or highway work by the State of Georgia, or from other sources." Section 3 of article 4 (p. 247) of the State highway law is as follows: "All funds realized from motor-vehicle licenses or fees under present or future laws, less the expense of collecting the same as provided by law, shall be deposited with the treasurer of this State, to the credit of and as a part of the State-aid road-fund hereinbefore created; and said funds shall be controlled and disbursed under the provisions of this act." By section 1 of article 5 of the State highway law (p. 247) the State Highway Department is declared "to have charge and control of all road or highway work designated or provided for, or done by the State or upon the State-aid roads; to designate, improve, supervise, construct, and maintain a system of State-aid roads; provided that no road shall become a part of said system until the same shall be so designated by the State Highway Board by written notice to the county road authorities concerned; to have the control, charge, supervision, and expenditures of all funds now or hereafter appropriated or provided for highway or road work by the State, or which may be a part of the State-aid road-fund." Section 2 of article 5 requires the State Highway Board to designate the system of interconnecting county-seat public roads, "to be known as State-aid roads, as comprised under" provisions 1, 2, 3, et seq. of said section. Section 4 of article 5 provides: "The division and allotment of the State-aid road-fund, or other available funds, shall be annually divided

between the twelve congressional districts as now created, and which shall constitute the road ·districts, according to the designated mileage of each road district as compared to the total mileage of the designated roads in the whole State, and construction work shall be begun and carried on simultaneously in each and every one of said road districts with the funds annually apportioned thereto." It is contended that the motor-vehicle act and the State highway law were "companion bills;" that the motor-vehicle bill is a "complement" to the State-highway bill; and that both acts may and must be construed to carry into effect the intention of the legislature. Beyond question it is the duty of the courts to so construe the two acts as to give effect to both, and as to carry into effect the intention of the lawmakers, if possible. Enough, however, has been quoted from each of the acts to show that, with respect to. the distribution of the State-aid road-fund, each law provides a different plan of distribution, and that the two plans are necessarily inconsistent with each other. The motor-vehicle act provides for a distribution of the fund in a given way, that is, among the counties of the State according to "the post-road mileage of each county." The highway law provides for a distribution in a given way, that is, by making each congressional district a road district, and apportioning the fund among. the congressional districts in the proportion that the roads in a district bear to the total authorized mileage of the State, to wit, not exceeding 4800 miles (Ga. L. 1919, p. 249). The highway law provides for roads which connect the county-seats of the State. Seventy per cent., at least, of the available fund shall be used for the construction of actual paving, or for the purpose of reimbursing counties which have actually constructed paved roads, and thirty per cent. for the purpose of maintaining, paving, grading, and improving State roads preparatory to paving the same, etc. (sec. 7, p. 251). In the distribution and division of the fund, as provided in the motor-vehicle act, post-roads only are considered. In the highway law no reference is made to post-roads, and under the plan created in the highway law the mileage of roads that might be constructed could be greater or less than the mileage of post-roads in the county. Interconnecting county-seat roads are commanded and required by the State highway law. The unit for distribution, as provided by the State highway law, is the congressional district. The unit

for distribution, as provided by the motor-vehicle act, is the county. As said above, each act provides a complete scheme of road improvement. It is apparent that the State Highway Board can not divide the fund derived from the sale of motor-vehicle licenses, etc., among the several counties in this State according to the post-road mileage in each of the counties, and at the same time divide the same funds among the twelve congressional districts in this State according to the State-aid road mileage as compared to the total State-aid road mileage in the entire State. We are therefore of the opinion that the learned judge before whom the case was heard correctly concluded that the provisions of the motor-vehicle act and the State highway law, with respect to the distribution of the State-aid road-fund, are necessarily in direct conflict. The judgment refusing the writ is therefore affirmed.

*Judgment affirmed. All the Justices concur.*