CAIN *et al. v.* SMITH *et al.*

1. The power of legislation may be taken away from the lawmaking body by the constitution as well by implication as by express prohibition, and prohibitions against legislation which result by implication are equally as effectual as when they are express, and are to be regarded in the one case no less than in the other.

2. It is to be necessarily implied from the provisions of the constitution in relation to the incurring of indebtedness by municipalities, that the General Assembly has not the power to provide for the submission of such questions to the qualified voters in connection with other issues entirely foreign to the matter of the debt sought to be incurred.

3. The question as to the establishment of the enterprise or project for which the debt is to be incurred may be submitted in connection with the question of incurring the debt; but the better practice, even in such cases, is to submit these questions separately.

4. If a statute is in part valid and in part invalid, and the objectionable portion is so connected with the general scheme of the statute, that, should it be stricken out, effect can not be given to the legislative intent, the whole statute must fall.

5. Applying the principles above laid down to the facts of the present case, the court erred in not granting the injunction prayed for.

Argued March 24,—Decided April 8, 1903.

Petition for injunction. Before Judge Roan. DeKalb superior court. February 9, 1903.

*King, Spalding & Little* and *Abbott & Goree,* for plaintiffs.
*Arnold & Arnold,* for defendants.

COBB, J. On December 2, 1902, an act was approved providing for a new charter for the town of Edgewood. Acts 1902, p. 409. The first section of the act repealed the act of 1898, incorporating the town. The second section declared "that the City of Edgewood, in the county of DeKalb, be, and the same is, hereby incorporated as a city under the name of City of Edgewood." The third section defines the corporate limits of the city, and within the limits thus prescribed is embraced more territory than was embraced within the corporate limits of the town. The following thirteen sections of the act confer upon the city authorities many of the usual powers granted to municipal corporations, provide for a form of government, etc. The 17th and 18th sections relate to the establishment of a system of public instruction in the city. The 19th section authorizes the city to issue bonds not to exceed $10,000 in amount, the proceeds to be used for the purpose of erecting school buildings and

purchasing sites for the same.    The 20th section extends the corporate limits over certain territory for police purposes only.    The 21st section is in the following words : " This act shall go into effect and become operative upon its adoption by a two-thirds vote of the qualified voters of said City of Edgewood, at a special election to be held for that purpose on the first Wednesday in January, 1903, which election shall be held in the same manner and under the same rules as elections for mayor and aldermen under this act; provided, the notice of the intention to hold said election has been given as required by section 377 of the Code of Georgia, 1895, volume one ; and in said special election those voting for the adoption or ratification of this act shall have upon their ballots the words, ' For bonds and adoption,' and those voting against the adoption or ratification of this act shall have the words, ' Against bonds and adoption.'    In the event that two thirds of the qualified voters of said City of Edgewood shall vote in favor of the adoption of this act, it shall, upon the certificate of such result by the election managers, go into effect and become operative.    If this bill shall fail of adoption at the first election, it may be again submitted to a vote at another election, to be held one year from the first election, and thereafter annually if recommended by the mayor and council of the town of Edgewood."    An election was held at the time fixed in the section of the charter above quoted, and it is claimed that two thirds of the qualified voters embraced within the territory described in the act as the City of Edgewood voted " for bonds and adoption."    Certain persons, who. resided within the limits of the territory above referred to and would be taxpayers and citizens of the City of Edgewood if the act were adopted, brought their petition praying that the persons claiming to have been elected as mayor and aldermen at the election be enjoined from carrying the act into effect.    The judge refused to grant the injunction prayed. for, and this ruling is assigned as error.

The constitution provides that local laws having for their object the establishment of public schools within the limits of municipal corporations shall not " take effect until the same shall have been submitted to a vote of the qualified voters in each county or municipal corporation, and approved by a two-thirds vote of persons qualified to vote at such an election ;" the General Assembly having authority to prescribe who shall vote on such question.    Civil Code,

§ 5909. The constitution also provides that no municipal corporation shall incur any new debt, except for a temporary loan to supply casual deficiencies of revenue, not to exceed one fifth of one per centum of the assessed value of taxable property therein, " without the assent of two thirds of the qualified voters thereof, *at an election for that purpose,* to be held as may be prescribed by law." Civil Code, § 5893. The General Assembly has power to create municipal corporations, and there is no restriction in the constitution upon this power. The General Assembly may incorporate a town or city by a legislative act simply declaring such town or city to be a municipal corporation. It may declare that the territory embraced within given limits shall be a city or town upon certain conditions named in the act; as that a certain proportion of the people embraced within such territory shall give their assent to the creation of the corporation. If the General Assembly, in its discretion, sees proper to submit this question to the people to be affected, then the number who shall give their assent is also purely within the discretion of the General Assembly. It will thus be seen that the General Assembly has power to authorize a municipal corporation to have an election on the question of the establishment of public schools, and to have an election on the subject of incurring a debt; and also to authorize the persons to be affected by the creation of the municipal corporation to determine whether the corporation shall come into existence. The controlling question in the present case is whether the General Assembly has authority to provide that the qualified voters within a given territory shall pass upon all of these questions at one time. Has the General Assembly authority to provide for an election which may result in the creation of a municipal corporation, in the establishment of a system of public schools, and in the incurring of a debt for this purpose, the voters being required to vote at the same time either for or against all of the propositions submitted ? The constitution is clear in its terms in regard to elections on the subject of incurring debts. It says that an election shall be held "for that purpose;" and it is necessarily to be implied that the voters shall be permitted to express their opinion on this question disconnected from any other proposition which may be submitted for their consideration, not related to the subject of incurring the debt. The purpose and scheme of the constitution is to discourage the incur-

ring of debts by municipal corporations, and such debts are to be incurred only when the assent of two thirds of the qualified voters has been freely and voluntarily given. The voters are entitled to have this question submitted to them so that they may pass upon it freely and untrammeled by any other consideration than the question whether the debt shall be incurred for the purpose for which the money to be raised is to be used.

It has been held not to be improper to submit to the qualified voters' at the same time the question whether schools shall be established and whether bonds shall be issued for the purpose of maintaining such schools; though it was said, at the time that this ruling was made, that even in such cases the better practice would be to provide for separate elections on these questions. *Brand* v. *Lawrenceville*, 104 *Ga.* 486. This is the only ruling this court has ever made upon the subject, and this goes no further than holding that the qualified voters may be called upon to vote at the same time upon the question whether a debt shall be incurred and whether the enterprise for which the money to be thus raised is to be used shall be undertaken. Further than this we do not feel justified in going. If the General Assembly were allowed to submit two, three, or more propositions at one time in connection with the question of incurring a debt, and to require the citizen to vote for or against all, the question of incurring the debt would no longer be left to the will of the qualified voters of the towns and cities of the State, but would be remitted to the subtlety and ingenuity of those interested and usually influential in passing local legislation, in combining together various matters which might have the effect to bring about a vote in favor of bonds, when it might not have been brought about if the single issue had been submitted to a vote. It is said, though, that the constitution does not in terms prohibit the General Assembly from submitting to the qualified voters the question of incurring a debt, along with other questions. The power of legislation may be taken away from the lawmaking body by the constitution as well by implication as by express prohibition, and prohibitions against legislation which result from implication are equally as effectual as when they are express, and are to be regarded in the one case no less than in the other. 6 Am. & Eng. Enc. L. (2d ed.) 934, note 6, citing Page *v.* Allen, 58 Pa. St. 338, s. c. 98 Am. Dec. 272. The case just cited was dealing

with a law providing for the registration of voters, which made a condition of registry the possession by the voter of certain qualifications additional to those prescribed by the constitution, there being nothing in the constitution expressly prohibiting the legislature from requiring that the voter should have such qualifications. In the opinion of the court by Thompson, C. J., there is the following language : "It is usual, on the part of those who insist on the constitutionality of any given statute, to claim that it must be regarded as constitutional unless expressly prohibited by some provision in the constitution. In other words, in construing the constitution of the State, whatever is not expressly denied to the legislative power is possessed by it. The opposite of this rule, I may remark, is the rule of construction of the Federal constitution. I assent to this, but not that the inhibitions of the constitution must always be express. They are equally effective, and not less to be regarded, when they arise by implication, and this is the case when the legislative provision is repugnant to some provision of the constitution. Leib *v.* Commonwealth, 9 Watts, 200 ; Hill *v.* Humphrey, 5 Watts & S. 424 [39 Am. Dec. 117] ; Eakin *v.* Raub, 12 Serg. & R. 330 ; Commonwealth *v.* Maxwell, 27 Pa. St. 444 ; Chase *v.* Miller, 41 Id. 403. To illustrate this idea : The executive power of the State, under the constitution, is lodged in a governor ; and the legislative in a senate and house of representatives. It would be manifestly repugnant to these provisions of the constitution if an act of assembly should provide for the election of two executives, or two senates and houses of representatives, at the same election ; yet it would be unconstitutional only by implication, there being no express prohibition on the subject. So in regard to qualification for office. An act which should require a residence in the State for ten years, instead of three, or an age of fifty years or freehold estate, in order to be eligible to the office of representative, would be void for repugnancy, because differing from the qualification expressed in the constitution, and would be so only by necessary implication — necessary to keep legislation within the paramount rules of the constitution."

When it is apparent that the policy of the constitution is against the incurring of municipal indebtedness, and that such indebtedness is to be incurred only with the assent of the qualified voters of the municipality, "at an election for that purpose," is there not

necessarily an implication that the General Assembly will not submit the question of incurring the indebtedness in such a way that the qualified voters will be tempted, even if not constrained, to authorize the creation of the debt, solely in order that other propositions submitted at the same time may succeed? Under the ruling in the *Brand* case, the General Assembly had authority to submit at the same time to the qualified voters of Edgewood the question of the establishment of schools and the question as to whether the facilities for the schools should be secured by an issue of bonds. But it did not have authority to submit, at the time these two questions were voted on, the further proposition as to whether the City of Edgewood should come into existence as a municipal corporation. We have therefore, without much difficulty, reached the conclusion that the assent of the qualified voters within the territory intended to be embraced within the City of Edgewood have not given their assent to the incurring of the indebtedness in the manner prescribed by the constitution. So much of the act, therefore, as provided for a submission of this issue to the qualified voters at the same time with the issue of incorporation or no incorporation is unconstitutional and void. The question then arises, what effect has this invalid part of the act upon the remainder of it? As stated above, the General Assembly had the right to incorporate the City of Edgewood, and prescribe, as a condition precedent to incorporation, that the people to be affected by it should consent thereto. Considering the act as a whole, it is apparent that the General Assembly intended that the City of Edgewood should come into existence as a municipal corporation only in the event the election provided for in the 21st section of the act should result "for bonds and adoption," that is, it was intended that this new municipality should not take its place among the municipalities of the State unless two thirds of the qualified voters in the territory to be affected assented to three propositions,—the creation of the municipality, the establishment of schools, and the incurring of a debt of $10,000 to provide for the same. The question was submitted by the General Assembly in this way, and it is therefore to be inferred that unless this could be done it was not the intention of the General Assembly to create the municipality. The rule applicable in such cases is thus stated by the present Chief Justice in *Elliott* v. *State*, 91 *Ga.* 696: "When a statute can not be sus-

tained as a whole, the courts will uphold it in part when it is reasonably certain that to do so will correspond with the main purpose which the legislature sought to accomplish by its enactment, if, after the objectionable part is stricken, enough remains to accomplish that purpose. But if the objectionable part is so connected with the general scope of the statute, that, should it be stricken out, effect can not be given to the legislative intent, the rest of the statute must fall with it. The courts can not construct from a defective statute a law which the lawmaking body did not intend to enact and which it can not be presumed it would have been willing to enact. See Cooley's Const. Lim. (6th ed.) 209 et seq.; Sutherland, Stat. Constr. §§ 169-180 ; Baldwin v. Franks, 120 U. S. Rep. 678, and cases cited." See also *Papworth* v. *State*, 103 *Ga.* 37 (2). Under the principle stated in the quotation just made, it is apparent that the legislative scheme in the act under consideration can not be carried out, and therefore the entire act must fall. The court erred in not granting the injunction prayed for.

*Judgment reversed. By four Justices. Candler, J., disqualified.*