## Park *v*. The State.

Lumpkin, J.   1. The evidence was sufficient to show prima facie that the dying declarations offered in evidence were made while the person making them was in articulo mortis and was conscious of his condition; and they were properly admitted. *Findley* v. *State*, 125 *Ga.* 579.

2. Where a proper foundation was laid by the evidence for the admission of a dying declaration, the fact that while it was being made an interruption took place and it was not then completed, but a short time thereafter and during the same day the dying person completed the statement, and substantially repeated what he had already said, would not render such dying declarations inadmissible, it appearing prima facie that he was still in the article of death and conscious of the fact, and it not being shown that either his bodily condition or his mental apprehension thereof had changed for the better.

3. Where a witness who testified to a dying declaration stated that while it was being made he asked the dying person one or two questions, this was not sufficient to show that the declaration was not voluntarily made or to render it inadmissible.

4. That a witness who testified to a dying declaration stated that he did not remember every word the deceased said, did not render his testimony inadmissible, where he remembered and stated substantially the entire declaration.

5. Where certain evidence of a witness which was of considerable length (covering nearly two pages of writing) was objected to as a whole, and much of it was admissible, there was no error in overruling the objection, even if a small part of such evidence may have been inadmissible. In such a case, it is the duty of the objecting party to point out that portion of the evidence which is inadmissible and object to it. *Johnson* v. *State*, 125 *Ga.* 243.

6. After a conviction of voluntary manslaughter, newly discovered evidence of a witness who would testify that "sometime before the killing" the deceased saw the defendant and his brother passing, and spoke of them to the new witness, with whom he was at the time, using a vile epithet in referring to them, and saying that he would be willing "to wear jeans pants, eat dry bread, and drink branch water to get to kill them," did not require the grant of a new trial. This evidence would only be cumulative of other evidence introduced on the trial, tending to show the animus of the deceased toward the accused, and that the former was the assailant. Besides, it did not appear with any degree of definiteness how long before the homicide the statement was made.

7. Where a witness was present at the time of a rencounter which resulted

in a homicide, and this fact was known to the defendant, and the witness was accessible, but apparently no effort was made to ascertain what evidence he would give or to have him present as a witness on behalf of the defendant, it did not furnish any ground for a new trial that, after conviction, the defendant made inquiry of the witness and discovered that he would testify to certain facts beneficial to such defendant.

8. There was no error in rejecting evidence that "immediately after the shooting, less than five minutes," the accused, who had committed a homicide, told a witness that he was looking into the barrel of the pistol of the deceased when he (the accused) fired the first shot. Such statement appears to have been in the nature of a narrative of a past transaction, to have been self-serving in its character, and not to have been free from the suspicion of afterthought; nor was it even shown whether it was made at the scene of the homicide or elsewhere. *Warrick* v. *State,* 125 *Ga.* 133(4).

9. The evidence authorized a charge on the subject of manslaughter.

10. The presiding judge charged on the subject of justifiable homicide, as contained in section 70 of the Penal Code, and in connection therewith charged in regard to the doctrine of reasonable fears, as contained in section 71. He also charged the jury with respect to mutual combat and the defense which could arise under section 73 of the Penal Code, and in connection therewith charged in regard to the fears of a reasonable man. Under the evidence there was no error in doing so; nor, in view of the entire charge, does it appear that there was such a confusion of the various sections as was calculated to injure the defendant.

11. The evidence authorized a charge on the subject of mutual combat and mutual intention to fight.

12. A careful consideration of the entire charge, and of the context in which the charges complained of were used, fails to show that there was error harmful to the accused, or calculated to mislead or confuse the jury.

13. Where the presiding judge fully instructed the jury as to the law of the case, and as to the forms of verdict, there was no error in preparing and allowing the jury to carry out with them written forms of verdicts, it appearing that a form appropriate to every finding which could be legitimately made under the evidence and the law was given to the jury, and it not being made to appear that this was done in such a manner as in any way to affect or influence their finding, but, on the contrary, the presiding judge warning them that this was done merely to enable them to shape into proper form whatever verdict they might find.

14. The evidence fully supported the verdict, and there was no error in overruling the motion for a new trial.

*Judgment affirmed. All the Justices concur.*

Argued October 17,—Decided November 8, 1906.

Indictment for murder—conviction of manslaughter. Before Judge Reagan. Pike superior court. June 30, 1906.

*B. F. McLaughlin, J. F. Redding, B. L. Tisinger,* and *E. M. Owen,* for plaintiff in error. *O. H. B. Bloodworth, solicitor-general, E. F. Dupree,* and *J. Y. Allen,* contra.