## 3236.   SMITH *v.* THE STATE.

1. The evidence, though conflicting, authorized the verdict rendered.
2. The admissibility of dying declarations is only prima facie a question for the court. After testimony as to the statements of the deceased is admitted, it is for the jury to determine whether they were in fact made by him when he was in the article of death and when conscious of his condition, so as to make them dying declarations. Even when the jury is satisfied that the statements attributed to the deceased were made by him, and that he was at that time in a dying condition and conscious of that fact, they should still be received with great care and weighed with caution.
3. The admissibility of dying statements attributed to a deceased person is not affected by the fact that the statements may have been elicited in response to questions put to him by a bystander; nor does it matter how or by what means the deceased becomes conscious that he is dying, provided he is really conscious of that fact and impressed with the solemnity of his situation. The circumstances under which one mortally wounded might be apprised of his dying condition, as well as the fact that he made his statements in response to questions, or under other circumstances, may affect the credibility of the alleged statements; and the jury, in the light of the facts and in the exercise of the caution required by law, would have the right to accept them as true, or to reject them as unworthy of credit, because they might be considered due to outside influence, or because made in a spirit of revenge, or because made under such circumstances that the declarant was either unable to state the facts or unwilling to do so.

DECIDED JUNE 7, 1911.

Conviction of manslaughter; from Oglethorpe superior court—Judge Meadow. January 18, 1911.

*E. P. Shull, Joel Cloud,* for plaintiff in error.

*Thomas J. Brown, solicitor-general,* contra.

RUSSELL, J. 1. The plaintiff in error was indicted for murder and was found guilty of voluntary manslaughter. The evidence in his behalf would have fully justified the jury in acquitting him; but, on the other hand, the evidence on the part of the State, if it was more credible to the jury, fully authorized the result reached. A very large number of witnesses testified on each side of the issue; but the testimony of each witness accorded in the main with that of all of his fellows on the same side, and was in conflict with the testimony of all the witnesses in behalf of the opposite party. The case is that of a killing where a large gathering was assembled, and where one set of witnesses saw the transaction in one light, and another testified to an entirely different state of facts. It was for the jury to resolve the conflict.

2. The only assignment of error which really presents anything for our consideration is that which relates to the admissibility of certain statements of the deceased, admitted as dying declarations. It appears that Jim Morris, the deceased, was an employee of the prosecuting witness, Lee Calloway. It is argued that in consequence of this relationship Calloway exercised a great, if not a controlling, influence over the deceased, and that as Calloway told him that he was going to die, before he made the alleged dying declarations, and as they were elicited by Calloway's questions, they should have been excluded from the consideration of the jury. An additional objection to the testimony was that a proper foundation for its admission was not laid prior to its introduction. Calloway's testimony was very brief. He said: "I knew Jim Morris. I saw him after he was dead. He lived on my place. I saw him about 9 o'clock at night. He died some time during the night. He told about the difficulty between him and John Smith, when he got shot. I think he knew he was going to die. I told him I thought he was going to die. He said he thought so too. I told him I would like for him to tell me exactly what occurred there. I went down there as soon as I got my supper. He was not in pain then. He was lying on the bed, breathing very hard. He didn't discuss his death. He said he was dancing on the head, and John Smith came on and took his place, and that July asked him if he was shooting at him. He said, 'No,' and Jim asked him if he was shooting at him, and he took out his pistol and shot him. He told me that from the first. He was very thin then. I suppose he was about 5 feet 11. I suppose he would weigh about 145 pounds. I first told him I thought he was going to die, and told him to tell me what occurred."

Under this testimony we think the statements attributed to the deceased were prima facie admissible as dying declarations. "Dying declarations, made by any person in the article of death, who is conscious of his condition, as to the cause of his death and the person who killed him, are admissible in evidence in a prosecution for the homicide." Penal Code (1910), § 1026. The admissibility of dying declarations is only prima facie a question for the court. After the testimony as to the statements of the deceased is admitted, it is for the jury to determine whether they were in fact made by him when he was in the article of death and when conscious of his

condition, so as to make them dying declarations. Even when the jury is satisfied that the statements attributed to the deceased were made by him, and that he was at that time in a dying condition and conscious of that fact, they should still be received with great care and weighed with caution.

In the present case the objection to the testimony, if any, should have been addressed to the jury, instead of to the court, and placed upon the ground that the circumstances under which the statements were made were such as to rob them of that sanctity which is equivalent to the administration of an oath. Three things must be shown to render statements admissible as dying declarations within the meaning of the law: (1) that the deceased made the statements; (2) that he was in a dying condition; and (3) that he was conscious of that fact. The existence of the two latter requisites should be ascertained and determined before any inquiry is made into the nature of the statements themselves; but in this case the witness was permitted to testify, and then a motion was made to exclude the testimony as a whole. Addressing ourselves, as the trial judge had to do, to the question whether Jim Morris was in a dying condition and conscious of that fact, it must be remembered that both of these facts are susceptible of proof by circumstantial as well as by direct evidence. That he was in a dying condition might be determined in the first instance by the court, and subsequently by the jury, from the fact that Calloway talked with him about 9 o'clock at night, and that he was dead before daylight; and likewise it was inferable from the statements of the deceased that he, too, thought that he was going to die and that he was conscious of his condition. We do not say that the fact that the deceased stated he thought he was going to die necessarily compelled a conclusion on the part of the jury that he really believed he was going to die, but certainly the judge, in determining as to the admissibility of the testimony, could not adjudge that the deceased falsely stated this opinion.

3. So far as the admissibility of this testimony is concerned, the fact that Calloway told Jim Morris that it was his opinion that Morris was going to die, before Morris expressed any opinion upon that subject, is without any legal significance, though this circumstance might detract from the weight the jury might give to the statement attributed to Morris. If the jury thought that the

declarant's statement that he, too, thought he was going to die was for any reason untrue, it would, of course, reject all statements made by him, upon the ground that, it not being shown that the deceased was really conscious that he was going to die, the sanctity of an oath could not be dispensed with. On the other hand, if satisfied that the witness really believed that he was soon to die, the jury could consider the statements as being in the nature of a dying declaration, but could still test the credibility of the statements by other circumstances, similar to those which might affect the credibility of any witness. Were the statements of the deceased, even though he was dying and conscious of that fact, influenced by the controlling mind of another, or colored by the character of the questions put to him, or actuated by revenge, or unreliable because of physical or mental weakness, or because of ignorance as to facts which he purported to relate? The admissibility of a dying declaration is one thing; the weight to be attached to it another and entirely different thing. The admissibility of such evidence is an exception to the general rule. Its admissibility is to be twice tested—first by the court, and finally by the jury. Ordinarily the court alone tests the admissibility of testimony, and the jury is only to say whether it believes or disbelieves such testimony as the court submits to it. Dying declarations, however, belong to that class of testimony which, even after the court has held it to be prima facie admissible, it is still within the power of the jury to disregard. The reason lies in the fact that, if there is any evidence that the deceased was at the time of his statement in a dying condition and conscious of that fact, not only should the credibility of the statement be submitted to the jury, but also the issue as to whether it was in fact a dying declaration; and not only is it within the power of the jury to discredit the statements attributed to the deceased, even if convinced that they were made under circumstances which the law holds to be equivalent to the sanctity of an oath, but the jury may find, upon a review of all the facts and circumstances, that at the time the statements were made, the deceased was not in a dying condition, and that, even if he was in a dying condition, he was not conscious of that fact.

Even, however, if the jury in any case should find it to be it-duty to consider the dying declarations as a part of the testimony in the case, they should be received with the utmost caution. It

is to be borne in mind that the author of this testimony is not subject to cross-examination; that, like all other human beings, he is subject to the influence of passion and revenge; that his physical condition may militate against a clear statement of what actually occurred, or that he may be giving expression rather to his opinion as to what occurred than to facts actually resting in his knowledge. The only point made in the assignment of error of which we are now treating is as to the admissibility of the testimony, and as to this we think the views we have expressed are amply supported by previous rulings in this State. In *Dumas* v. *State,* 62 *Ga.* 59, it was held: "That declarations offered in evidence as dying declarations were made under the belief that the wound was mortal and death impending, may be inferred from the nature of the wound and other circumstances, though nothing direct was said respecting death or danger. The court must judge of the preliminary evidence in the first instance, and, deeming it prima facie sufficient, should admit the declarations to the jury, instructing the jury afterwards to pass finally for themselves on the question whether or not the declarations were conscious utterances in the apprehension and immediate prospect of death." To the same effect are the rulings in *Young* v. *State,* 114 *Ga.* 849 (40 S. E. 1000), and *Bush* v. *State,* 109 *Ga.* 126 (34 S. E. 298), as well as in numerous other cases which might be cited. The ruling in *Robinson* v. *State,* 130 *Ga.* 362 (60 S. E. 1005), which is cited by learned counsel for the plaintiff in error, has no application to the point raised in the present record. In that case the error of the trial judge consisted in charging that when a man is conscious that he is dying or about to die, and has received a mortal wound from which of necessity he must die, the law presumes that statements made by him in view of approaching death are true. Of course, this charge was disapproved, and it is manifest error, for the reason, to which we have already adverted, that the jury must determine, with great caution, whether the statements of the deceased are true, even after it has found that they are dying declarations.

4. It is stated by counsel for plaintiff in error in their brief that there was incorporated in the motion for a new trial a ground in which it was alleged that the judge erred in failing to instruct the jury as to the law governing the consideration of dying declarations. It is stated that this ground of the motion was stricken

by the presiding judge, and we are referred to the charge of the court as embodied in the record as evidence of the fact that this objection to the charge is well sustained. Nothing is better settled than that this court can not consider an exception which is not approved by the trial judge.

If there was in fact such a ground of the motion for a new trial, it should not have been stricken by the judge. It should either have been approved and certified to be true, or disapproved as untrue. This is the proper practice, for the reason that the motion for new trial is the handiwork and property of the movant, and, though its value may be entirely dependent upon the approval of the trial judge, his only duty is to disapprove statements of fact which are untrue, and approve those which are true, either unqualifiedly or with such qualifications as will make the truth apparent. We have said thus much in regard to the matter only because we know that the upright judge who presided at this trial is incapable of doing any one an injustice, and yet, as our attention has been several times directed to similar instances in other cases, we have thought it best to use this occasion to call the attention of our brethren of the trial bench to a practice more proper than that which has sometimes prevailed even without criticism. As was held in *Denton* v. *State, 6 Ga. App.* 3 (63 S. E. 1132), it is the duty of the judge to point out distinctly to the jury that caution should be observed in the use of dying declarations, and failure to do this is ground for a new trial. However, the exception that the verdict is contrary to law is not sufficient to present the point.

*Judgment affirmed.*