## BASS *v.* THE STATE.

ATKINSON, J. 1. Where a defendant on being convicted of a crime makes a motion for new trial, and more than sixty days after the verdict tenders a bill of exceptions complaining of the judgment overruling such motion, error cannot be separately assigned in the bill of exceptions, complaining of a ruling of the court made at the trial on the admissibility of evidence. The complaint in the bill of exceptions, invoking a ruling on certain constitutional questions based on alleged error in the admission of evidence, can not be considered.

2. Where a motion is made to rule out the entire evidence of a witness in mass, and a part of the same is competent evidence and unobjectionable, it is not error to overrule the motion. · Applying this ruling, the assignment of error based on the ground of the motion for new trial which complains of the refusal of the court to rule out the testimony of the physician, as to the nature of the wounds, cause of the death, dying declarations, etc., is without merit.

3. The fact that the trial judge leaves his seat on the bench and remains a few feet away in the court-room for a short while during the argument of the attorney for the State is no cause for granting the defendant a new trial, where it is not shown that injury has resulted to the defendant. *Pritchett* v. *State,* 92 *Ga.* 65 (2), 67 (18 S. E. 536). It was alleged that the defendant was injured, because his attorney desired to move the court to expunge certain remarks made by the attorney for the State, and to move for a mistrial on account of such remarks, but could not do so on account of absence of the judge, and when the the judge resumed his seat on the bench the matter had " passed out of his [the attorney's] mind." *Held,* that even if the remarks were improper, any possible injury to the defendant was attributable to the failure of defendant's attorney to make appropriate objection and motion for mistrial, and not to any improper absence of the judge.

4. It was not erroneous to charge the jury: " The defendant in this case, as in all criminal cases, enters into the trial of the case with the presumption of innocence in his favor, and that goes with him throughout the entire trial until met and overcome by evidence satisfactory to you of his guilt beyond a reasonable doubt," the alleged ground of error being that the jury should have been instructed " that the burden of proof was upon the State to prove the defendant's guilt beyond a reasonable doubt, and that the State had to carry this burden before the jury could convict the defendant."

5. The judge charged: " The defendant has made a statement in your hearing. You can give to that statement just such weight and credit as you think it is entitled to receive. You may believe it in preference to the sworn testimony and acquit the defendant." *Held,* that this charge was not erroneous for the alleged reason that " the court failed in this immediate connection to charge the jury that the defendant had a right under the law to make a statement, and that they could believe it in preference to the sworn testimony if they wished to do so. This

charge on the defendant's statement is not full enough, and does not charge the statutory law on the subject so that the jury could understand it."

6. The evidence authorized the charge defining express malice in the language of the Penal Code, § 61.

7. The court charged: " The defendant insists in this case that the killing was the result of an accident; and upon that subject I charge you as follows: A person shall not be found guilty of any crime or misdemeanor committed by misfortune or accident, and where it satisfactorily appears that there was no evil design or intention or culpable neglect." *Held*, that this charge stated a correct principle of law applicable to the case. If the defendant desired further instructions on the subject, there should have been an appropriate written request.

8. " In order to make dying declarations admissible in evidence, the deceased must not only be actually in extremis, but he must believe that he is in a dying condition. And this consciousness may be inferred, not only from the statements of the party, but also from the nature of the wound, and other circumstances." *Campbell* v. *State*, 11 *Ga.* 353 (3) ; *Washington* v. *State*, 137 *Ga.* 218 (73 S. E. 512) ; *Fitzpatrick* v. *State*, 149 *Ga.* 75 (99 S. E. 128). Applying this rule, the evidence authorized the charge: "It is insisted by the State that the deceased made a dying declaration; and I charge you, that the court leaves it to you whether or not a dying declaration, in fact, has been made. I charge you, that dying declarations made by any person in the article of death, who is conscious of his condition, as to the cause of his death and the person who killed him, are admissible in evidence in a prosecution for the homicide. A dying declaration, if you find from the evidence that one was made, must not be considered by the jury unless you are satisfied beyond a reasonable doubt from the evidence that such declaration was made when the deceased was in the article of death and that she knew at the time that same was made of her condition. I charge you further that dying declarations should be received with great care and caution."

9. Neither the evidence nor the prisoner's statement, considered separately or in conjunction, tended to show such drunkenness of the accused as to render him irresponsible for crime; and even if the requests to charge on that subject accurately stated correct principles of law, the judge did not err in refusing such requests.

10. Even if the case involved circumstantial evidence, there being also direct evidence upon all the issues in the case, there was no error in omitting to charge on the law of circumstantial evidence. *Jones* v. *State*, 147 *Ga.* 356 (3), 357 (94 S. E. 248).

11. " ' If the newly discovered evidence [urged as a ground for new trial] is that of witnesses, affidavits as to their residence, associates, means of knowledge, character, and credibility must be adduced.' Civil Code, § 6086." *Phillips* v. *State*, 138 *Ga.* 815 (2) (76 S. E. 352). There being no such affidavits as to the residence, character, etc., of such witnesses, the discretion of the court in refusing a new trial on the ground of such newly discovered evidence will not be disturbed.

12. The ground of the motion for new trial which complains that there was no arraignment of the prisoner is without merit. The record shows that there was express waiver of the arraignment by the attorney for the accused.

13. The evidence was sufficient to support the verdict; and none of the assignments of error show cause for reversal.

*Judgment affirmed. All the Justices concur.*

No. 2648.  DECEMBER 15, 1921.  REHEARING DENIED JANUARY 13, 1922,

Indictment for murder. Before Judge Kent. Laurens superior court. April 25, 1921.

Marshall Bass was convicted of the murder of Annie Bass (wife of the accused) by shooting her with a gun. The exception is to a judgment refusing the defendant a new trial. The State introduced testimony of witnesses substantially as follows: On the evening of November 30th, 1920, about sundown and just before dark, the defendant was seen walking with his wife along the road near and away from his home. The latter carried a baby in her arms, and a small child walked with them. When practically opposite the residence of a neighbor the defendant was seen to strike his wife with his hand, and she was heard to say, " Minnie sees you " (meaning the wife of the neighbor). Defendant then shot his wife with a single-barreled shotgun. She fell, and he reloaded the gun and shot again. After the shooting the defendant came by the neighbor's yard, stayed a few minutes, and left and ran through the field towards the branch, carrying his gun in his hand. He seemed to be drinking. Certain persons coming along the road in an automobile took up the woman from where she had just fallen, and carried her to the hospital some two miles away. She was shot in the abdomen, and died in less than two hours after the wound was inflicted. The doctor to whom the woman was carried for treatment testified that the shot entered the abdomen on the right side and went straight in just above the pelvis. She was pulseless and in a dying condition when she was brought in, and died while on the operating table. She lived after being brought there somewhere from half an hour to an hour. She was conscious of her condition, and stated that her husband shot her for going over to her father's, or was mad with her for going over there. The statement of the accused was: " Gentlemen of the jury: They got me accused of murdering my wife: it is not so. On the last day of November my house rent was due. I was going that night to pay it, and my wife said that

she didn't want to stay there until I got back, and I told her to come on and go down to Mr. Shepard's and stay until I got back; we were walking on the right-hand side of the road, and I had the shotgun in my left hand, and my little boy wanted to tote it, and I snatched it out of his hands, and when I snatched it out of his hands it fired off; when the gun fired I tried to pick her up, and I couldn't, and I raised up and run off toward the branch to get somebody to help me pick her up and carry her to the house; and then the next thing I thought of was a doctor. I thought I would get a doctor, and I went on down the road to get a doctor. I had nearly a pint of whisky in my pocket, and I went on after the doctor, and I met the sheriff, and I drank the whisky. I told the sheriff that I done it accidentally, and to please go on with me after a doctor. These folks come up here and swore to things that is not so; I wouldn't have shot my wife for anything; if anybody ever had a good woman, she was. If you hang me you will hang an innocent man." In rebuttal the State introduced testimony to the effect that shortly after the homicide, when the defendant was arrested, he stated that he shot his wife accidentally; that he started to shoot a dog, and she stepped around the corner of the house. He looked like he was drinking, though witness did not smell anything on his breath; he did not stagger. Witness did not see the sheriff take any whisky "off of him." Another witness testified that he was a deputy sheriff, and carried the defendant off to jail that night; and that "his conduct" then "showed that he had been drinking."

*John R. Cooper,* for plaintiff in error.

*R. A. Denny, attorney-general, E. L. Stephens, solicitor-general,* and *Graham Wright, asst. atty.-gen.,* contra.