## BENTON *v.* THE STATE.

1. On a trial for murder, where the accused introduced testimony that the deceased was advancing on him with a drawn ax and attempting to kill him, evidence of dying declarations by the deceased, given in response to questions, that he had no ax and no knife and no weapon, was admissible. The objection that proper foundation for receiving this evidence had not been laid was not well taken.

2. Testimony that a sister of the deceased (wife of the accused) said, in the presence of the accused and just before he made the dying declarations, that he ought to tell the truth—that he was after the defendant with an ax, was properly repelled.

3. In view of other instructions on the subject, the charge to the jury, that if the State had produced evidence sufficient to convince them be-

yond a reasonable doubt of the defendant's guilt they would be author-
ized to convict him, did not exclude from their consideration the testi-
mony he introduced and his statement.

4. An instruction to the effect that the jury should base their verdict on
the truth as they believed it to be was not erroneous, in view of other
instructions as given, relating to the presumption of innocence and to
reasonable doubt.

5. The instruction as to dying declarations, to which the accused excepted
as an incorrect statement of his contention, was not misleading although
one word was inaptly used, and was not erroneous in view of the other
instructions on the·subject.

6. The exception that the court failed to instruct the jury that the burden
rested on the State to produce testimony sufficient to convince the jury
beyond a reasonable doubt of the guilt of the accused was without merit.

7. The evidence authorized the verdict.

No. 4162. APRIL 17, 1924.

Murder. Before Judge Munro. Muscogee superior court.
December 22, 1923.

Lee Benton was indicted for the murder of Flournoy Butler on
July 24, 1923, in Muscogee County. He was convicted with a
recommendation, and was sentenced to the penitentiary for life.
The evidence for the State tended to show that the deceased, a
youth of twenty years of age and a brother-in-law of the defendant,
took and wore the shoes of the latter without his consent. This
greatly infuriated the defendant, who hunted up the deceased,
and, when he found the latter, with his shoes on, took him to the
home of the mother of the deceased and the mother-in-law of the
defendant, where both lived. On arriving there the defendant
told the deceased to "come in here," he was "going to shoot the
shoes off of him." The deceased replied: "You needn't be talk-
ing to me like you were talking to a dog. I will pull your shoes
off." The mother of the deceased told him to come in and pull
off the shoes. The defendant then ran in and got a single-barreled,
breech-loading gun, and loaded it. The mother then tussled with
the defendant, trying to get the gun away from him. The de-
fendant told her to let him alone, and he would take the shell
out and put the gun up, which he did. The mother then went
back through the house and got the deceased, having left the
defendant standing in the middle of the floor. When she got the
deceased, the defendant had got the gun, put in the shell, and,
when he met the deceased at the door, shot him through the wrist,
the load entering the body of the deceased just below the navel,

of which wound the deceased died. The State proved the statements of the deceased set out in the first headnote. The State introduced a letter from the defendant to his mother, dated August 9, 1923, and written while he was in jail, awaiting trial for this offense. In this letter he said: "Mama tell Eula May to swear that she was there when Lee [the deceased was also called Lee] tried to kill me with that axe. Get that man to swear on the stain [stand] that he saw the axe on the porch when he carriage [carried] Lee to the hospitler [hospital]. Mama tell Eula May to swear on the stage [stand] for me. Swear she did see the boy with the axe and also my brother to help me the same way if you have to pay somebody to spike for me." He further wrote: "Tell papa to do all he can in helping me. If he got any money turn it aloose on me, because I do not my lifetime on the gaing."

The evidence for the defendant tended to show that the deceased was advancing upon the defendant with a drawn ax, and was attempting to strike him with it, when the defendant shot and killed him. Eula May was sworn as a witness for the defendant, and testified that the deceased was trying to kill the defendant, when the latter shot him.

*Love & Fort,* for plaintiff in error.

*George M. Napier, attorney-general, Walker R. Flournoy, solicitor-general,* and *T. R. Gress, asst. atty.-gen.,* contra.

HINES, J. 1. The defendant claimed that the deceased was attempting to kill him with a drawn ax, and that he shot and killed the deceased in self-defense. The court permitted a physician, who attended the deceased, to testify, over the objection of the defendant's counsel that the proper foundation for the introduction of dying declarations had not been shown, that the deceased, in articulo mortis, stated that he had no ax, knife, or weapon, and that the defendant shot him. The preliminary proof was as follows: One Layfield asked the deceased if he had an ax or a knife, when the physician told the deceased to go ahead and tell Layfield the truth, as he was going to die. Layfield then asked the deceased, if he had an ax, and the deceased replied, "No." Layfield then asked the deceased if he had a knife, and the deceased replied, "No." Layfield then asked the deceased if he had any weapons, and the deceased replied, "No." Layfield then asked the deceased who shot him, and the deceased replied,

"Lee Benton." The doctor testified, that he thought that was what the deceased said in reply to the last question; that the deceased said nothing about his knowing he was going to die; and that he made said answers within a few minutes of the time of his death. In reply to a question, if he knew that the deceased at that time entertained hope of getting well, the doctor replied that he did not think that the deceased entertained any thought of any kind much; that he did not know what was the mental state of the deceased, except that he was dying, and "didn't have much of a mental state;" that he did not think that the deceased could have thought or reasoned much; that the only voluntary talking the deceased did was asking for water; and that he did not think the deceased "had any reason about him. He was too near dead."

It is not necessary for the State to show affirmatively that the deceased said he was in a dying condition, in order to admit proof of his declarations, if in point of fact he was in articulo mortis, and the circumstances were such that he must have known that he was in a dying condition. Consciousness of his condition may be inferred from the nature of the wound and other circumstances. *Washington* v. *State,* 137 *Ga.* 218 (73 S. E. 512); *Jefferson* v. *State,* 137 *Ga.* 382 (3) (73 S. E. 499); *Barnett* v. *State,* 136 *Ga.* 65 (70 S. E. 868). The fact that the statements of the deceased were made in response to questions asked him by another does not render such statements inadmissible. This fact may affect the weight to be given to the statements, but not their admissibility. *Park* v. *State,* 126 *Ga.* 575 (55 S. E. 489); *Smith* v. *State,* 9 *Ga. App.* 403 (71 S. E. 606). We do not think that the trial judge erred in holding that a prima facie case had been proved for the admission of these statements, by reason of the fact that the physician by whom they were proved testified that he did not think that the deceased, at the time of making them, had much of a mental state, and that he did not think that the deceased could have thought or reasoned much; it appearing that the deceased at the time asked for water, and answered the questions which elicited said statements, without suggestion as to how he should answer them, and apparently in a rational manner. Under these circumstances, the opinion of the physician as to the mental condition of the deceased and his ability to think and reason went to the weight to be given them by the jury, and not to their ad-

missibility; it further appearing that the judge charged the jury the section of the Penal Code defining dying declarations, and instructed them that they must determine whether the statements attributed to the deceased were dying declarations; that testimony touching what were claimed to be dying declarations should be received with great caution; that, if they found there were dying declarations, they were to determine what weight was to be given to them; and that in order to make such statements, if any were made, evidence at all, the jury must be satisfied beyond a reasonable doubt that they were made by the deceased while in a dying condition, and that he knew at the time they were made he was in such condition.

2. The defendant contends that the court erred in excluding evidence offered by him, to the effect that, just before the deceased made the statement set out in the foregoing headnote, the sister of the deceased and wife of the defendant, in the deceased's presence, said that the deceased ought to tell the truth—that he was after defendant with an ax. This evidence was inadmissible, because it was mere hearsay; and clearly it was not admissible upon the theory that the deceased acquiesced in the truth of the statement made by defendant's wife in his presence, the deceased having then and there made a statement contradictory to the statement made by the wife of the defendant.

3. The defendant excepted to the following instruction to the jury: "If the State has produced evidence sufficient to convince you beyond a reasonable doubt of the defendant's guilt, you would be authorized to convict him." The error assigned is that this instruction limited and restricted the jury to a consideration of the testimony for the State alone, and excluded the statement of the defendant and the testimony of his witnesses. This instruction was given in connection with the court's charge upon the subject of the presumption of the innocence of the defendant. The court further charged the jury as follows: "Now, gentlemen, under these rules of law that I have given you in charge, after considering all the evidence in the case, all of the facts and circumstances connected with the case, after having given due weight to the defendant's statement, if you should believe beyond a reasonable doubt that the defendant is guilty of the offense charged in this bill of indictment, that is of murder, you would be authorized

to convict him." The court further charged: "Now on the other hand, after considering all the evidence in the case, all of the facts and circumstances connected with it, after having given due weight to the defendant's statement, if you do not believe that the defendant is guilty, or if you have a reasonable doubt of his guilt, it would be your duty to acquit him." In view of the additional instructions set out above, the assignment of error upon the charge excepted to is without merit.

4. The defendant excepted to the following instruction to the jury: "The object of all legal investigations is the discovery of the truth. When you have found the truth, or when you believe you have found the truth, there you should base your verdict, regardless of consequences." The error assigned on this charge is that it does "not correctly state the law with reference to the degree of belief, which degree is that the jury must believe beyond a reasonable doubt before they could convict." The judge elsewhere in his charge told the jury that the presumption in favor of the defendant's innocence would continue until the State had produced evidence sufficient to convince the jury of his guilt beyond a reasonable doubt. He further instructed the jury that they would not be authorized to find the defendant guilty, if they had a reasonable doubt of his guilt; and that they must believe beyond a reasonable doubt that the defendant was guilty of the offense charged, before they would be authorized to convict him. In view of the above instructions, the language, in the instruction excepted to, "when you believe you have found the truth," did not amount to an instruction that the jury could base their verdict on any degree of belief other than one which arose beyond a reasonable doubt.

5. The court charged the jury as follows: "The State contends that the declarations made, that the evidence introduced as to dying declarations, that they are admissible in evidence as dying declarations and are entitled to weight. The defendant denies that. The defendant denies that they should be considered by you as dying declarations; and the defendant denies that even if you should consider them that they are without weight in the case." The defendant excepts to this charge, on the ground that it did not correctly state his contention, which was that the alleged dying declarations were not dying declarations in point of fact, that

they had no weight, and should not be considered by the jury at all. The court gave further instructions upon the subject of dying declarations, the substance of which is set out in the first paragraph above. In view of the full instructions of the court upon the subject of alleged dying declarations, while the use of the word "denies," in the last sentence of the instruction complained of, was inapt and incorrect, it was a mere lapsus linguæ which could not have misled the jury, it being apparent to any person of ordinary intelligence, from the instruction complained of and from the other instructions upon this subject, that the court meant to tell the jury that the defendant contended that there were no dying declarations, and that the alleged dying declarations were without weight. See *Southern Ry. Co.* v. *Merritt,* 120 *Ga.* 409 (47 S. E. 908); *Lothridge* v. *Varnadore,* 140 *Ga.* 131 (78 S. E. 721); *Newman* v. *State,* 144 *Ga.* 494 (87 S. E. 398); *Flannigan* v. *State,* 13 *Ga. App.* 663 (79 S. E. 745); *Benton* v. *Harley,* 21 *Ga. App.* 168 (94 S. E. 46).

6. The sixth ground of the motion for new trial is as follows: "Because the court failed and refused, at any point in his charge, to instruct the jury that the State made the charge against the defendant, and the State carried the burden of proof, and the burden rested upon the State to produce testimony sufficient to convict [convince?] the jury beyond a reasonable doubt as to the guilt of the defendant." In view of the court's instructions upon the presumption of the defendant's innocence, and upon the subject of reasonable doubt, the substance of which is set out above, this ground of the motion is without merit.

7. The verdict was authorized under the evidence.

           *Judgment affirmed. All the Justices concur.*