BOARD OF EDUCATION AND ORPHANAGE FOR BIBB COUNTY *v.* STATE BOARD OF EDUCATION *et al.*

202

[redacted]

No. 12231. May 14, 1938.

[redacted]

*Jones, Russell & Sparks* and *Harry S. Strozier,* for plaintiff.

*M. J. Yeomans, attorney-general, Dave M. Parker,* and *W. H. Duckworth,* for defendants.

Atkinson, Presiding Justice. In section 3 of the charter of the Board of Education and Orphanage for the County of Bibb, as amended (Ga. L. 1872, p. 388; 1873, p. 218; 1876, p. 314), it is provided: "That the said board shall be entitled to, and shall receive for the purposes aforesaid from the State School Commissioner, the pro rata share of Bibb County of all taxes now paid to the State, and specially set apart for educational purposes, and all appropriations for said purposes; and from the Treasurer of the State of Georgia the pro rata share of said county of all endowments, devises, gifts, and bequests made, or hereafter to be made, to the State or State Board of Education, and of any and all educational incomes and funds not belonging to and due to the State University, now in the treasury of the State, and of one half of the net earnings of the Western & Atlantic Railroad now in the treasury of the State, or hereafter to be deposited—said pro rata share to be determined by the ratio which the number of children, white and colored, in said county, between the ages of six and eighteen, bears to the number of white and colored children in the State between the ages of six and eighteen; and said board shall further have the power to assess such tax upon the taxable property of said County of Bibb as they may think necessary to support the system of schools and orphan homes which they may establish, which tax, when approved by the Board of County Commissioners of Bibb County, shall be levied by the Ordinary of said county, and collected like other taxes of said county." In section 3 of the equalizing-opportunities act of 1937 (Ga. L. 1937, p. 882) provision is made for division of the several counties in the State and the various independent school systems into "units of administration" to be managed by the local superintendents and

boards of education of the several counties under rules and regulations of the State Board of Education. "Provided . . that those counties in which the public schools are operated under special acts recognized and continued by the constitution of 1877, shall be governed by the provisions of this act, except where the same is in conflict with any such special act." Sections 4 et seq. of the act provided for classification of such units of administration and teachers; also for teachers' salaries according to specified grades to be fixed by the State Board of Education and paid from the "common-school fund and· such appropriations as may have been or may hereafter be made by the General Assembly for common school purposes," according to the classifications. The Bibb County board instituted mandamus proceedings against the State Board of Education and the State Superintendent of Schools, to compel apportionment and allotment to complainant of the pro rata share of Bibb County of the State common-school tax funds, on the basis and in the manner prescribed in section 3 of complainant's charter, instead of allotment under the general act of 1937 as intended to be done by the respondents. On the pleadings, by which no issue of fact was made, the judge refused mandamus absolute, and the complainant excepted.

■ One ground of attack upon section 3 of the body of the incorporating act is that it is void as violative of article 3, section 4, paragraph 5, of the constitution of 1868 (the constitution then in force) inhibiting passage of any "law or ordinance . . which refers to more than one subject-matter, or contains matter different from what is expressed in the title thereof." The foregoing quotation from the constitution of 1868 appears also in article 3, section 7, paragraph 8, of the constitution of 1877. The provision in the constitutions appears respectively in the Code of 1873, § 5056, and the Code of 1933, § 2-1808. It was alleged that the act was violative of the constitution, "for the reason that the title of same made no reference to the appropriation of funds as provided in section 3, and section 3 which purported to appropriate funds to said county on the basis contended for by petitioner was a subject-matter separate, independent, and distinctly different from the subject-matter stated in the title of said act." This ground of attack is not to be construed as making the question that section 3 of the act referred to more than one subject-matter,

and consequently no such question will be ruled upon; although certain of the decisions which shall be cited contain rulings that would be pertinent if the question had been made. The ground of attack raises the question whether appropriation of funds by section 3 of the act was matter different from what was expressed in the title. It was said in *Welborne* v. *State,* 114 *Ga.* 793, 816 (40 S. E. 857) : "The title to an act need not contain a synopsis of all of its provisions. Any legislation which is germane to the general purpose of the act as indicated in the title can be properly embraced in the act, and, no matter what may be its details, the legislation embraced therein will not render the act subject to the objection that it contains matter variant from the title, so long as such matter is legitimately within the general scope of the purpose of the act as indicated in the title." In *Smith* v. *Bohler,* 72 *Ga.* 546 (2), it was said: "Is the title, 'to regulate public instruction in the County of Richmond,' broad enough to embrace the power to tax? The teachers must be provided; children can not be taught without them. To procure their services requires money. To raise the money necessitates the power to reach the pockets of the people. That power is nothing more nor less than the power to tax. So that, to regulate the great interest of public instruction involves and embraces the power to tax. The superintendent of the entire system is its practical regulator. He must be paid. Discipline, government in each schoolroom, must be confided to some subordinate to regulate the behavior of the children; and hence there must be a teacher in each school or schoolroom, otherwise it will be all play and no study, and nothing will be regulated for the sole object of the system, to wit: 'public instruction in the County of Richmond.' To procure these head-regulators of each school, money must be had, and it is sheer nonsense to attempt the regulation without the money to pay the practical regulators. To furnish schoolhouses and rooms, money is equally essential, for these must be rented or leased, or bought or built; children can not be taught, or regulated while taught, without places in which to house them. Whence is the money to be got for these necessary purposes of education, if not by taxation? We are clear, therefore, that the foundation on which the power to regulate public instruction rests, to wit, teachers and schoolhouses, is money. It is the only means to the end. Without it

the wheels all stop, and the factory, which makes men and women sufficiently strong in texture not to rot out and ruin the political fabric, sooner or later must suspend work in Richmond County; and the board of education will become wholly impotent to regulate public instruction, because there will be none for them to regulate." This ruling was cited with approval in *Cobb* v. *Hall,* 136 *Ga.* 254 (5) (71 S. E. 145) ; *Davis* v. *Warde,* 155 *Ga.* 748, 771 (118 S. E. 378) ; *Morgan* v. *Shepherd,* 171 *Ga.* 33, 37 (154 S. E. 780). In *Clark* v. *Black,* 136 *Ga.* 812, 814 (72 S. E. 251), it was held : "Where the title of an act provides for the establishment of a court, the appointment of a judge and a solicitor, and the definition of their powers and duties, a provision in the body of the act fixing the fees of the solicitor and the mode of their payment is germane to the general object of the act, and does not offend the constitutional inhibition against the enactment of a law containing matter different from what is expressed in the title." See generally, on the subject, *Mayor &c. of Macon* v. *Hughes,* 110 *Ga.* 795 (36 S. E. 247) ; *Central of Georgia Railway Co.* v. *State,* 104 *Ga.* 831 (4) (31 S. E. 531, 42 L. R. A. 518) ; *Cady* v. *Jardine,* 185 *Ga.* 9 (193 S. E. 869). In the instant case while the caption of the act under consideration does not specifically mention appropriation of funds to support the objects of the incorporation mentioned in section 3, it shows the name of the corporation as a public institution created with "duties and powers" that would involve appropriation of funds to carry out the objects of the corporation, to which was added "and for other purposes." A legislator from reading the caption would anticipate provision in the body of the act for appropriation of funds necessary to carry out the objects of incorporation. Applying the foregoing principles, the caption of the act was sufficiently broad to comprehend the provisions of section 3. Consequently that part of the act was not violative of article 3, section 4, paragraph 5, of the constitution of 1868, as substantially embodied in the constitution of 1877, on the ground that it referred to a matter not expressed in the caption.

■ The ruling announced in headnote 2 rests upon the principle announced in the first division, and does not require elaboration further than the statement that the portion of the act of 1870 sought to be repealed was in conflict with the provisions of the repealing act.

■ Another ground of attack on section 3 of the incorporating act is that it is violative of article 1, section 26, of the constitution of 1868 (Code of 1873, § 5018), providing that "Laws shall have a general operation, and no general law affecting private rights shall be varied in any particular case by special legislation, except with the free consent, in writing, of all persons to be affected thereby; and no person under legal disability to contract is capable of such free consent." It was alleged that said act sought to appropriate common-school funds to be used for the maintenance and support of orphanages in "violation of section 36 of the act approved August 23, 1872, which provided that all of the funds appropriated to the common schools should be used for educational purposes and none other." Ga. L. 1872, pp. 64, 74. This act of 1872 was adopted at the same session of the General Assembly, and was approved by the Governor on the same day as the incorporating act now drawn in question. Both acts relate to the subject of public education, and are to be considered together as if parts of the same act. The statutes differ from those involved in *County of Butts* v. *Strahan,* 151 *Ga.* 417 (107 S. E. 163), in which both statutes, though adopted on the same day, were approved by the Governor on different days, and the one last approved was held by this court to have been the last legislative expression and to have repealed by implication conflicting provisions of the other. Neither of these acts of 1872 purported to "affect private rights" within the meaning of the above-quoted provision of the constitution of 1868. A pertinent thought may be borrowed from the decision in Rugh *v.* Ottenheimer, 6 Oregon, 231 (25 Am. R. 513), where, referring to private rights, it was said they are "confined to such rights, when applied to property, as persons may possess unconnected with, and not essentially affecting, the public interest, or growing out of a public institution of society." This construction of "private rights" as employed in the above provision of the constitution of 1868 is impelled when considered in connection with the context, including the language "except with the free consent, in writing, of all persons to be affected thereby; and no person under legal disability to contract is capable of such free consent." In the foregoing construction of the quoted provision of the constitution of 1868, section 3 of the incorporating act is not void on the ground that it is violative of

the designated provision of that constitution. The above-quoted provision was afterwards embodied in article 1, section 4, paragraph 1, of the constitution of 1877 (Code of 1933, § 2-401). It there followed immediately after the sentence: "Laws of a general nature shall have uniform operation throughout the State, and no special law shall be enacted in any case for which provision has been made by an existing general law." This clause inhibiting enactment of special laws for which there is an existing general law was not in the constitution of 1868, and has no potency in the construction of that constitution, with which the foregoing discussion deals. The cases of *Board of Commissioners of Sumter County* v. *Americus,* 141 *Ga.* 542 (81 S. E. 435); *City of Macon* v. *Road Commissioners of Bibb County,* 150 *Ga.* 116 (102 S. E. 867), cited by the defendants, involved local statutes enacted since adoption of the constitution of 1877 containing the above-quoted clause, and consequently are not pertinent to the question now under consideration.

■ Another ground of attack on section 3 of the incorporating act is that it is violative of article 1, section 29, of the constitution of 1868 (Code of 1873, § 5021; Code of 1933, § 2-5004), which provides that: "No poll-tax shall be levied except for educational purposes, and such tax shall not exceed one dollar annually upon each poll." Also, that it is violative of article 6, paragraph 3, of the constitution of 1868 (Code of 1873, § 5134), which provides: "The poll-tax allowed by this constitution, any educational fund now belonging to this State—except the endowment of, and debt due to, the State University—or that may hereafter be obtained in any way, a special tax on shows and exhibitions, and on the sale of spirituous and malt liquors—which the General Assembly is hereby authorized to assess—and the proceeds from the commutation for militia service, are hereby set apart and devoted to the support of common schools." It is alleged that section 3 of the act is violative of these provisions of the constitution of 1868, for the reasons that section 2 of the act in question expresses authority upon the corporation "to organize homes for the destitute orphans of said county under the age of sixteen years, and to provide for the education and maintenance of said orphans," and section 3 of the act provides "that the said board shall be entitled to and shall receive for the purposes aforesaid ·from the State

School Commissioner the pro rata share of Bibb County of all taxes . . specially set apart for educational purposes, and all appropriations for said purposes." The above-quoted article 1, section 29, of the constitution limits the levy of a poll-tax to *educational purposes,* and said article 6, paragraph 3, of the constitution appropriates said poll-tax *to the support of common schools.* The common schools are conducted for educational purposes. The Board of Education and Orphanage for Bibb County is a corporate administrative body. It is designed for educational purposes and to operate the common schools in that county. In section 3 of the act it is empowered to receive from the State and apply for such purposes the county's pro rata share of all State taxes *specially set apart for educational purposes, and all appropriations for said purposes.* This would include the poll-tax, and consequently would involve power to apply poll-tax to support of orphanages as provided in section 2 of the act. A statute should be given a construction which will not render it unconstitutional, if such can be done. *Lindsey* v. *Board of Commissioners of Colquitt County,* 169 *Ga.* 368, 370 (150 S. E. 261). Applying this rule, the provision of the act relating to orphanages contemplated both maintenance and education of destitute orphans under sixteen years of age, the primary purpose being education, and maintenance of destitute orphans merely incidental to education of that class of children who without maintenance could not receive the benefits of education. Such being the character of the act, section 3 did not violate the enumerated provisions of the constitution of 1868 because, as contended, it authorized application of the county's pro rata share of the common-school fund to maintenance of orphanages as provided in section 2 of the act. And construing the provisions of the incorporating act relating to orphanages as incident to and a part of the system of schools for Bibb County as above indicated, section 3 of the incorporating act does not, as contended by the defendants, inhibit allotment to Bibb County of funds appropriated by section 24 of the general appropriation act approved March 30, 1937 (Ga. L. 1937, pp. 54, 68), on the ground that such appropriation was solely for the purpose of operating the common schools of the State, and that a part of the funds, if allotted to Bibb County, would be used for maintenance and support of orphans. This of course does not mean that such funds

might be appropriated to orphans generally, but refers to maintenance and support of orphanages as provided in the act for the education of destitute orphans under the age of sixteen years.

■ Another attack on section 3 of the incorporating act is that it is violative of article 8, section 1, paragraph 1, of the constitution (Code of 1933, § 2-6601), which provides: "There shall be a thorough system of common schools for the education of children, as nearly uniform as practicable, the expenses of which shall be provided for by taxation, or otherwise." This attack complains of violation of the constitution of 1877. The act in question was adopted in 1872 while the constitution of 1868 was in effect. It is not stated how or why it is contended that section 3 of the act violates or is affected by the designated section of the constitution of 1877. The constitution of 1868 did not contain the language "as nearly uniform as practicable." See article 6, paragraph 1 (Code of 1873, § 5132). This attack is too indefinite to present any question for decision. This may also be said of the attack on the whole act of incorporation (Ga. L. 1872, p. 388), complaining that it is violative of article 1, section 4, paragraph 1 (Code, § 2-401), of the constitution of 1877, which declares: "Laws of a general nature shall have uniform operation throughout the State, and no special law shall be enacted in any case for which provision has been made by an existing general law." The provision, "no special law shall be enacted in any case for which provision has been made by an existing general law," was not contained in the constitution of 1868. See article 1, paragraph 26 (Code of 1873, § 5018).

■ The incorporating act (Ga. L. 1872, p. 388) as amended has been construed and applied by the administrative State and county officials, conformably to the foregoing rulings, for more than sixty years. It was a valid law under the constitution of 1868, existing at the adoption of the constitution of 1877. It was a special law creating a local school system for the County of Bibb. It was not repealed, but on the contrary was preserved by article 8, section 5, paragraph 1, of the constitution of 1877 (Code of 1933, § 2-7001): "Existing local school-systems shall not be affected by this constitution." In *Smith* v. *Bohler*, *72 Ga.* 546, it was held: "The Board of Education of Richmond County is one of the county authorities, and under the constitution of 1868 the

legislature could grant to such board the power of taxation for school purposes. . . Under the title, 'to regulate public instruction in the County of Richmond,' an act of the legislature could grant authority to the board of education to levy a tax for school purposes, and such an act was not unconstitutional, as containing matter different from its title. . . Nor was an act regulating public instruction, which contained a power to the county board of education to assess a tax for educational purposes, unconstitutional, as containing more than one subject-matter." In the opinion it was said: "On those constitutional questions, . . so far as general provisions of the constitution of 1877 may be argued to affect the system of education in Richmond County, that constitution itself provides a complete answer. The first paragraph of the fifth section of the eighth article of that constitution declares: 'Existing local school systems shall not be affected by this constitution.'" This decision was followed in *Barber* v. *Alexander*, 120 *Ga.* 30 (47 S. E. 580), where it was held: "The constitution preserves local school systems as they existed in 1877, and permits municipal corporations and counties to establish and maintain public schools in their respective limits." See also *Clark* v. *Reynolds*, 136 *Ga.* 817 (2) (6) (72 S. E. 254). Nor was said incorporating act repealed or affected by the provision in article 4, section 2, paragraph 3, of the .constitution of 1877 (Code of 1933, § 2-2503), relating to renewal or amendment to charters of corporations, imposing as a condition to such renewal or amendment "that such corporation shall thereafter hold its charter subject to the provisions of this constitution; and every amendment of any charter of any corporation in this State, or any special law for its benefit, accepted thereby, shall operate as a novation of said charter and shall bring the same under the provisions of this constitution." This provision, being a part of the constitution of 1877, must be considered in connection with the above-quoted provision of the same constitution declaring that "existing local school-systems shall not be affected by this constitution," and construed as preserving unimpaired the said section 3 of the incorporating act.

■ In section 3 of the equalizing-opportunities act of 1937 (Ga. L. 1937, p. 882), provision is made for allotment of State public-school funds to counties differently than as provided in section 3 of the incorporating act of 1872, dealt with in the foregoing divi-

sions of this opinion. Section 3 of the act of 1937, supra, contains the proviso "that those counties in which the public schools are operated under special acts recognized and continued by the constitution of 1877 shall be governed by the provisions of this act, except where the same is in conflict with any such special act." This proviso should be considered in connection with the entire act of which it is a part. When so considered, the exception is not to be construed as referring only to the other provisions of said section 3, but as referring to all the provisions of the act of which it is a part; and the effect of the language, "except where the same is in conflict with any such special act," is to exclude from operation of the act all laws of such local school systems as had been recognized and continued by the constitution of 1877 that were in conflict with said act of 1937. Under this construction, section 3 of the incorporating act of 1872 was not repealed, nor were the provisions thereof as to allotment to the County of Bibb of its pro rata share of the State school tax modified by the act of 1937. Nor, in view of said excepting clause, would acceptance, by the county board, of benefits under the act of 1937 repeal or modify said section 3 of the incorporating act of 1872, on account of the provision in the aforementioned article 4, section 2, paragraph 3, of the constitution of 1877 (Code of 1933, § 2-2503) : "Any charter of any corporation in this State, or any special law for its benefit, accepted thereby, shall operate as a novation of said charter and shall bring the same under the provisions of this constitution." To give a different construction to the excepting clause in the act of 1937 would by implication destroy that which the constitution expressly declared "shall not be affected." No such legislative intent should be ascribed to the said act of 1937.

■ The ruling stated in headnote 8 does not require elaboration. *Judgment reversed. All the Justices concur.*

BELL, Justice, concurring. I concur in the judgment and in the opinion as written, except that the first and second divisions do not express the precise reasons which have led me to join in the *conclusions* therein stated. The act of 1872 on which the complainants rely purports by its caption to be a special act having sole and exclusive reference to Bibb County. If there were no other considerations except a comparison of this act with the constitution of 1868, I would be inclined to say that sections 3 and 6 contain

matter different from what is expressed in the title. In view of the local character of the act as indicated by its caption, the "duties," "powers," and "purposes" mentioned in the caption would seemingly have contemplated matters and conditions limited in their effect to the single county named. The public-school fund of the whole State would not readily have suggested itself as the subject-matter of a special or local statute, beyond some provision authorizing the county board to receive and apply the share otherwise lawfully allotted to it. In view of the generally public character of the State fund, it seems that the matter of *apportionment* would more naturally have been expected in a general law. The same would be true of a repeal in part of a general statute. Accordingly, in the view of the writer, sections 3 and 6 of this special statute can not be held germane to the title without an extremely liberal construction of the constitutional provision in question. An act of the General Assembly, however, is presumed to be constitutional, and should not be declared unconstitutional by this court unless its invalidity is apparent beyond a reasonable doubt. While a void statute may not be validated by lapse of time, the presumption in favor of an enactment is especially strong where it has been long acquiesced in and treated as valid by the various departments of government. Where its invalidity is in doubt, contemporaneous and practical construction is strongly persuasive, if not decisive. This appears to be the generally accepted doctrine. *Epping* v. *Columbus,* 117 *Ga.* 263 (7) (43 S. E. 803); *Cunningham* v. *State,* 128 *Ga.* 55, 57 (57 S. E. 90); *Carroll* v. *Wright,* 131 *Ga.* 728, 736 (63 S. E. 260); United States *v.* Midwest Oil Co., 236 U. S. 459, 473 (35 Sup. Ct. 309, 59 L. ed. 673), and cit.; 12 C. J. 798, § 223.

There is no hint in this record that the State board of education or any other department or official ever questioned the act of 1872 until after the passage of the act of 1937, on which the State board relies in this proceeding. In the constitution of 1877 statutes of this class are mentioned and preserved, subject, however, to judicial decision as to their validity. Code, §§ 2-7001, 2-8504. In 1887 the General Assembly passed a general act relating to public schools, by section 53 of which it was provided, "that nothing contained in this act shall be construed to annul or repeal any local law now of force in any city or county in this State, providing for

the organization and maintenance of the common or public schools in such city or county." Ga. L. 1887, p. 67. In 1919 another act was passed, adopting what was termed a school code. In section 162 it was declared: "None of the provisions of this article shall apply to local county school systems which were in existence at the time of the adoption of the constitution of 1877." Ga. L. 1919, p. 354. In like manner the act of 1937 provided, "that those counties in which the public schools are operated under special acts recognized and continued by the constitution of 1877, shall be governed by the provisions of this act, except where the same is in conflict with any such special act." Ga. L. 1937, p. 882, § 3.

From 1872 until 1887, that is, for a period of fifteen years, the rule of apportionment under the general law was different from that contained in the special act of 1872. See general act 1872, p. 64, § 8. There is nothing to show that during this period the State authorities did not apportion to Bibb County its share of the school fund on the basis of the special act as distinguished from the general act. For the next fifty years there was no reason to distinguish between the general and the special law, in the matter of apportionment, the rule being the same under each. So the special act of 1872 is presented to us not as a fresh statute to be examined solely by a comparison of its provisions with the inhibitions of the constitution. On the contrary, it is fortified by contemporaneous construction and practical application over a long period, together with express exception from the constitution of 1877, and legislative recognition in three later enactments during a period of sixty-five years. Since the invalidity of the act is not entirely free from doubt, these additional considerations necessarily enter on the side of its constitutionality. On the whole, it can not be declared beyond a reasonable doubt that the act is unconstitutional as containing matter different from what is expressed in its title. While the foregoing remarks have been addressed to that question only, which, to the mind of the writer, is the closest point for decision, the same reasoning might, if necessary, be applied, either in whole or in part, to the other constitutional questions raised.