STATE BOARD OF EDUCATION *et al. v.* BOARD OF PUBLIC
EDUCATION OF SAVANNAH; *et vice versa.*

784

M. J. Yeomans, attorney-general, Ellis G. Arnall, and W. H. Duckworth, for plaintiffs in error.

Isaac S. Peebles Jr., and T. M. Cunningham, contra.

Russell, Chief Justice. The Board of Public Education of the City of Savannah and the County of Chatham brought mandamus proceedings against the State Board of Education and the State Superintendent of Schools, to compel apportionment to petitioner of its share of the State common-school funds "on the basis laid down in the act establishing and chartering petitioners," instead of as prescribed by the equalizing-opportunities act of 1937 (Ga. L. 1937, pp. 882 et seq.). The defendants filed general and special demurrers, and an answer. No issues of fact being raised, the judge, after a hearing, overruled all demurrers and granted a mandamus absolute, requiring the defendants to pay to the plaintiff "its part of the common-school tax fund of this State . . upon the basis of the law as it existed prior to the act approved February 10, 1937, . . that is to say, upon a basis of school population of Chatham County as compared to that of the whole State, and in accordance with the acts of the General Assembly of 1866, and act amendatory thereof." To this judgment the defendants excepted. By cross-bill the plaintiff assigns error on the refusal of the court to hold the act of 1937 unconstitutional on grounds set forth in an amendment to its petition.

Section 1 of act approved March 21, 1866 (Ga. L. 1865-6, p. 78), provided for the creation of the "Board of Education for the City of Savannah, whose design and purpose shall be the direction, management, and superintendence of the public education of white children in the said city, between the ages of six and eighteen years." Sec. 2 provided that said board should have full power and authority to devise, establish, and modify from time to time, a plan and system of education for white children, between the

ages of six and eighteen years, in the City of Savannah, and to superintend the same; to appoint, suspend, and remove teachers of said children, and provide schoolhouses, to make by-laws, rules, and regulations for their own government, and for the government of teachers and schools under their superintendence." Sec. 4 provided that said board "shall be entitled to demand and receive for the purposes aforesaid, from the treasurer of the Board of Education of Chatham County, and from every other State or county officer, or person who may be in possession [of] or authorized to distribute the educational fund for the said county, so much of the said fund as shall be in proportion to the number of white children of said county, residing in the City of Savannah, . . and to expend the same, for the purposes aforesaid, according to their discretion." The above act was amended, December 18, 1866 (Ga. L. 1866, p. 175), by an act which in section 2.provided: "That all the powers, rights, privileges, and authority conferred upon the said board by the act of which this act is amendatory, or which may hereafter be conferred upon it by any other act, shall be and the same are hereby extended over the whole County of Chatham; and that the said board shall be exclusively entitled to receive, from every public officer or person who may be in possession of or authorized to distribute the State and county educational funds, the whole proportion of the said funds to which the said County of Chatham may be entitled, and to appropriate and distribute the same at their discretion, for the education of all the white children in the said county between the ages of six and eighteen years." Section 4 provided: "That no general law upon the subject of public education, now in force or hereafter to be enacted, shall be held, deemed, or construed to interfere with, diminish, or supersede the rights, powers, and authority conferred upon the said 'Board of Public Education for the City of Savannah and the County of Chatham,' by this act or the act of which it is amendatory, unless it shall be. so expressly enacted." It is recited in the preamble of an act approved August 15, 1917 (Ga. L. 1917, p. 975): "Whereas the superior court of Chatham County, Georgia, by an order passed December 2, 1878, amended the charter of the board of public education for the City of Savannah and County of Chatham, so as to extend the jurisdiction of said board over public schools for the educa-

tion of colored children, or children of African descent, in the City of Savannah and County of Chatham, between the ages of six and eighteen years; and whereas question has been made as to the validity of this order, and it is desirable that any doubt on the subject be removed: . . It is therefore enacted by the General Assembly of the State of Georgia, that the said order of said superior court be and it is hereby validated and confirmed, and all the rights and powers given, or attempted to be given, by the said order to the said board . . are hereby conferred upon the said board as fully and completely as if the said amendment had been passed by the legislature of this State." It is stated in the brief of counsel for the plaintiffs in error in the main bill of exceptions that the only question for determination and adjudication by this court on that bill of exceptions is: "Is it the clear legal duty of the State Board of Education to apportion and distribute State educational funds to the Board of Public Education for the City of Savannah and County of Chatham upon the basis of the school population of Chatham County as compared with that of the entire State?" This case is somewhat similar to that of *Board of Education and Orphanage for Bibb County* v. *State Board of Education*, 186 *Ga.* 200 (197 S. E. 261). As appears from the report of the *Bibb County* case, the act creating the local board of education involved therein provided that the State educational funds should be apportioned to the board "by the ratio which the number of children, white and colored, in said county, between the ages of six and eighteen, bears to the number of white and colored children in the State between the ages of six and eighteen," while the charter of the plaintiff in the case at bar provides that the Chatham board shall receive "the whole proportion of said funds to which the said County of Chatham may be entitled, . . for the education of all the white children in the said county between the ages of six and eighteen years." No demurrer was filed in the *Bibb County* case; whereas in the present case the petition was attacked by a general and a special demurrer. One ground of general demurrer asserts that the suit is "an action against an agency of the State, but fails to show that the State has given its consent to be thus sued." Another makes the contention that it appears from a specified paragraph of the petition that the plaintiff's charter was amended by the legislature on

August 15, 1917, "which, under the provisions of art. 4, sec. 2, par. 3, of the constitution of this State, which reads as follows: 'The General Assembly shall not remit the forfeiture of the· charter of any corporation now existing, nor alter or amend the same, nor pass any other general or special law for the benefit of said corporation, except upon the condition that such corporation shall thereafter hold its charter subject to the provisions of this constitution; and every amendment of any charter of any corporation in this State, or any special law for its benefit, accepted thereby, shall operate as a novation of said charter and shall bring the same under the provisions of this constitution,' operated as a novation of the charter of 1866."

■ The petition is not subject to the ground of demurrer that it fails to show that the State consented to this suit. In *Stanley v. Sims,* 185 *Ga.* 518 (195 S. E. 439), it was ruled: "The suit being an action to enforce the performance of an official duty prescribed by statute, it was not within the rule that the State can not be sued without its consent." In the opinion it was said: "The suit is not an action against the State, as contended by the defendants. 'All official duties should be faithfully performed; and whenever, from any cause, a defect of legal justice would ensue from a failure or improper performance, the writ of mandamus may issue to compel a due performance, if there shall be no other specific remedy for the legal rights.' Code, § 64-101. The petition shows that the plaintiff was a director for the period in question. It alleges that the defendants have in their possession a sum of money appropriated by the General Assembly for the purpose of paying the salary claimed, but which the defendants have failed and refused to pay after demand. The statute fixes the salary (Code, § 54-105), and provides that the salaries of directors shall be paid out of the funds in the hands of the secretary-treasurer, according to rules and regulations prescribed by the department. Code, § 114-701. No question is raised as to the existence of an appropriation. The plaintiff's right to salary being clear, and the defendant having in hand an appropriated sum sufficient to pay it, it was their official duty to do so. The plaintiff is seeking to enforce a ministerial duty only, and there is no issue between him and the State." The plaintiff in the present case (under what is said in division 4 of this opinion, infra), being

clearly entitled to have paid to it the proportion of the State educational funds sought, was entitled to maintain the action.

■ There is no merit in the ground of demurrer that the fact that the charter of the plaintiff was amended by the act of 1917 operated as a novation thereof, and brought the same under the restrictions of the constitution of 1877. This point is determined adversely to plaintiffs in error by the *Bibb County* decision, supra.

■ The acts of 1866, supra, by which the charter of the plaintiff board was granted and amended, are not invalid as violating art. 1, sec. 2, of the constitution of 1868, or the fourteenth amendment to the United States constitution. The effect of these con-·stitutional provisions upon the acts of 1866 was to modify them to the extent that colored children should be entitled to share the educational fund of the county. "The act of December 12, 1859, to incorporate the Town of Warrenton (Acts of 1859, p. 210), was, in so far as it limited to white persons the right to vote in municipal elections held in that town, modified by the fifteenth amendment to the constitution of the United States, . . as well as by the provisions of article 2 of the constitution of this State, adopted and ratified in 1868." *Howell* v. *Pate,* 119 *Ga.* 537 (46 S. E. 667). The act of August 15, 1917, supra, was but declaratory of the effect of the constitutional provisions to which reference has been made.

■ We are of the opinion that the general law in force at the time of the passage of the acts of 1866, supra, not in conflict with said acts, entered into and became a part thereof. In paragraph 24 of the answer of the defendants in this case they "admit that from December 18, 1866, until November, 1937, plaintiffs have received its portion of the State school money on a basis prescribed by the general law of the State, and at no time was said basis such as prescribed by the act approved December 18, 1866, because said act prescribed no basis." The basis of calculation of the amount of State school funds to be paid to a county, at the time the acts of 1866 were passed and up to the time of the passage of the act approved August 23, 1872 (Ga. L. 1872, pp. 64, 66), was the proportion that the number of children of school age of the county bore to the number of such children in the State. By section 8 of the act cited (Codes of 1873 and 1882, § 1249, par. 3) such funds were apportioned "upon the basis of

the aggregate of youths between six and eighteen years of age, and all Confederate soldiers under thirty years of age in each county." By section 8 of the act approved October 27, 1887 (Ga. L. 1887, pp. 68, 70), and embodied in the Code of 1895, § 1345, and the Code of 1910, § 1547, the apportionment was again based on the number of children of school age in the county compared to that in the State. The same basis was prescribed by section 63 of the Code of School Laws of 1919 (Ga. L. 1919, pp. 288, 314; Code, § 32-510), as follows: "It shall be the duty of the State Superintendent of Schools annually to equitably apportion the State school revenue to the different counties and independent local systems, upon the basis of the aggregate of children between six and eighteen years of age, inclusive, in each county." So that from the time of the passage of the acts of 1866, incorporating the defendant in error, until the passage of the act of 1937, the defendant in error received State educational funds upon the basis of its comparative school population, except during the operation of the act of 1872, supra.

Section 3 of the act of 1937, supra, provides for a division of the several counties in the State and the various independent school systems into "units of administration," to be managed by the local superintendents and boards of education under rules and regulations of the State Board of Education. However, it is also provided in this section, "that those counties in which the public schools are operated under special acts recognized and continued by the constitution of 1877 shall be governed by the provisions of this act, except where the same is in conflict with any such special act." Section 4 designates "units of administration," according to density of population. Section 5 provides that the State Board of Education shall annually determine the number of teachers to be employed for the minimum term prescribed by section 1 of the act, this number of teachers varying from one teacher for each forty pupils in the elementary grades and one teacher for each thirty-five pupils in the high-school grades, in the group having the densest population, to one teacher for each twenty pupils in the elementary grades and one teacher for each fifteen pupils in the high-school grades in the group having the least population density. Sec. 6 provides: "No teacher, principal, supervisor, or superintendent, other than county school superin-

tendents, shall be employed in the public schools unless such person shall hold a certificate from the State Board of Education, certifying to his or her qualifications . . or a county license issued by a county board of education pursuant to the rules and regulations of the State Board of Education." Sec. 7 declares that the State Board of Education shall provide, by regulation, for the classification of all of the teachers of the public schools in this State. Section 9 provides: "The common-school fund and such appropriations as may have been, or may hereafter be made by the General Assembly for common-school purposes, shall be used by the State Board of Education to carry out the provisions of this act, and for the following purposes:" (1) to pay teachers, in accordance with salary schedules prescribed by the State Board of Education; (2) to pay the salaries of county school superintendents; (3) to pay each local unit for operating expenses a sum sufficient when added to the total amount which may be raised by such local unit of administration, by a local tax levy of five mills, to equal one third of the amount allocated to such local unit of administration for salaries; (4) to pay the administrative expenses of the State Department of Education and of the State Board of Education. Sections 12 and 13 provide for a budget to be submitted to the State Board of Education by each local unit, and further provides that the State Board of Education may disallow any item in the budget of which it does not approve.

It will be noted that under the terms of the charter of the Board of Public Education for the City of Savannah and the County of Chatham this board is entitled to administer its own system of education; to "devise, establish, and modify, from time to time a plan and system of education, . . to appoint, suspend, and remove teachers." The act of 1937, supra, undertakes to prescribe how teachers shall be elected, which matter is delegated to the defendant in error by the terms of the act approved March 21, 1866, supra. Nowhere in said act of 1937 is there provision for distribution of State school funds by the State Board of Education directly to the counties, but such funds are allocated for the payment of specific items in section 9. Under its charter, the defendant in error is entitled "to receive . . the whole proportion of said funds to which said County of Chatham may be entitled, and to appropriate and distribute the same at their

discretion." The provisions of the charter of the defendant in error and the sections of the act of 1937, supra, are in irreconcilable conflict as to the method of distribution of the common-school fund of the State, as we believe appears from the references to each just made. Such being the case, we are of the opinion that under the proviso in section 3 of the act of 1937, "that those counties in which the public schools are operated under special acts recognized and continued by the constitution of 1877 shall be governed by the provisions of this act, except where the same is in conflict with any such special act," the charter of the Chatham County board is unaffected by the provisions of the act of 1937 which have been quoted, and that said board is entitled to have apportioned to it State school funds on the basis it was receiving them at the time of the act of 1937. In *Board of. Education of Bibb County* v. *State Board of Education,* supra, it was held: "The provision in section 3 of the equalizing-opportunities act of 1937 (Ga. L. 1937, pp. 882, 883), relating to allotment of State public-school funds, contains a proviso which declares: 'That those counties in which the public schools are operated under special acts recognized and continued by the constitution of 1877 shall be governed by the provisions of this act, except where the same is in conflict with any such special law.' This proviso should be considered in connection with the entire act of which it is a part. When so considered, the exception should be construed as referring to all the provisions of the act, and its effect is to exclude from operation of the act all laws of local school systems that had been recognized and continued by the constitution of 1877."

■ Under what has been ruled herein, the judge properly over-ruled the general demurrers to the petition and granted a mandamus absolute. The special demurrers, so far as sufficient to raise any question, are either without merit or the paragraphs of the petition subject thereto so inconsequential as, had they been stricken, the statement of plaintiff's cause of action would have been unaffected. Since the judgment is affirmed on the main bill of exceptions, it is unnecessary to consider the cross-bill.

*Judgment affirmed on the main bill of exceptions; cross-bill dismissed.*