CALHOUN COUNTY *v.* EARLY COUNTY *et al.*

No. 16595. APRIL 11, 1949.

*Bennet, Peacock & Perry, Asa D. Kelley Jr.,* and *Lee Miller Jr.,* for plaintiff.

*J. Martin Cowart, A. H. Gray,* and *Hall & Bloch,* for defendants.

ATKINSON, Presiding Justice. (After stating the foregoing facts.) ■ The act approved February 20, 1945 (Ga. L. 1945, p. 148) provides: "That whenever the boundary-line of one or more of the counties of this State shall lie within the corporate limits of any town or city having more than twelve hundred (1200) and not over fourteen hundred (1400) inhabitants, according to the 1940 census of the United States, and it is desired to change the county lines and bring the said town or city wholly within the limits of one county only, the change of such county lines shall be effected in the following manner." (The act then makes provision for notice, election, and declaration of result.)

The act is attacked as unconstitutional, in that it violates article 1, section 4, paragraph 1 (Code, § 2-401) of the Constitution of the State of Georgia of 1877, which was then in force, providing that no special law shall be enacted in any case for which provision has been made by an existing general law; and further that it is in violation of article 11, section 1, paragraph 3, of the same Constitution, providing that county lines shall not be changed, except under the operation of a general law for that purpose.

In the agreed statement of facts it is admitted that the City of Arlington, under the census of 1940, had a population of 1337, and was the only town or city in the State situated in more than one county with a population between 1200 and 1400. A general law making provision for a change in county lines is contained in Code §§ 23-301 et seq. In view of this general law, and the fact that the act in question could apply only to the City of Arlington, it is therefore clearly and plainly in violation of article 1, section 4, paragraph 1, of the Constitution of 1877 (Code, § 2-401), as being a special law for which provision has been made by an existing general law. *Wilkinson County* v. *Twiggs County*, 150 *Ga.* 583 (104 S. E. 418); *Mayor &c. of Danville* v. *Wilkinson County*, 166 *Ga.* 460 (143 S. E. 769); *Christian* v. *Moreland*, 203 *Ga.* 20 (45 S. E. 2d, 201); *Hasty* v. *Hamrick*, 205 *Ga.* 84 (52 S. E. 2d, 470).

■ Early County in its answer interposes the doctrine of estoppel, asserting that Calhoun County by assenting to the election and finally certifying the area in question to be in Early County, and permitting the latter to exercise jurisdiction over

the area and the inhabitants thereof for all county purposes for a period of approximately two and a half years, is now estopped from questioning the constitutionality of the act.

In *Worth County* v. *Crisp County,* 139 *Ga.* 117 (76 S. E. 747), it was held, under facts very similar to those here involved, that the doctrine of estoppel did not apply. In that case it was sought to change county lines by an unconstitutional act, and it was held that no estoppel would arise by the consent of Worth County to the exercise of dominion by Crisp County under the unconstitutional act. The facts in that case are not given in the opinion, but the original record shows that, after following the procedure outlined in the unconstitutional act, Crisp County acquired the new territory and exercised complete dominion and jurisdiction over both the area and inhabitants thereof. It is unnecessary to relate in detail the various acts on the part of the two counties of the area as shown by the record in that case, but suffice it to say that the various acts there enumerated are, in principle, the same as those stated in the instant case.

It is strongly urged that the former case is not controlling, but is distinguishable. While in that case the suit was brought within eight months from the time Crisp County took jurisdiction over the territory, and in the instant case a period of two and a half years elapsed before proceedings were instituted; yet we see no material element in the doctrine of estoppel arising here by this difference in the time of instituting suit, or in the extent that individual or property rights may have been affected, as the surrender by Worth County of its jurisdiction to Crisp County was just as complete as the surrender here of Calhoun County to Early County. Neither is there any sound distinction between the absence of estoppel in that case and the instant case by reason of the provisions of the two acts, in that the act pertaining to Worth County and Crisp County provided no duties for the Board of Commissioners, as the governing authorities of Worth County, to perform, while in the act here in question the Board of Commissioners of Calhoun County were required to actually participate in effecting the transfer. Under the various acts alleged in that case to establish an estoppel against Worth County, some were of such a nature as would necessarily imply that the County Commissioners had relinquished the jurisdiction

of their county to Crisp County over the territory involved. In fact there was a specific allegation that the Commissioners of Worth County would not pay the cost of the election for which provision was made under the act, for the reason that the territory involved was not a part of Worth County, but was a part of Crisp County. Nor do we see any difference in the principle involved, on account of the territory in the *Worth* v. *Crisp County* case being rural, and the territory here being a part of a municipality.

Another instance where the doctrine of estoppel was denied as applied to affecting the true boundary lines between counties may be found in *Smith* v. *Dees*, 92 *Ga.* 549 (17 S. E. 925). See also Code, § 89-903; *Kennedy* v. *Howard*, 183 *Ga.* 410 (188 S. E. 673).

Early County relies upon the decision in *DeKalb County* v. *Atlanta*, 132 *Ga.* 727 (6) (65 S. E. 72), where an act of the legislature provided for an election to determine boundary lines between counties, and the act was attacked and it was sought to enjoin the holding of the election; and where the court, under authority of a previous decision, *Mayor &c. of Macon* v. *Hughes*, 110 *Ga.* 795 (2) (36 S. E. 247), held that, under the facts of the case under consideration, the proceedings to hold an election should be enjoined. After so ruling the court then said: "Indeed, if the plaintiffs had remained quiescent and had permitted the election to be held, the notices given, and the line between the two counties to be changed, and dominion over territory taken from one county to be exercised by the other, and perhaps expense incurred, and had then for the first time asserted that the entire proceeding was unconstitutional, would they not have been met with the contention that they were estopped, or that equity would not grant them relief because of laches in applying for its aid?"

The above expression, or question propounded in that decision, was not involved in the case. As above stated, the case was predicated upon a previous decision. The question of estoppel was neither pleaded nor involved. It is significant to note that the author of that opinion, Mr. Justice Samuel C. Atkinson, three years later wrote the decision in *Worth County* v. *Crisp County*, supra, holding that the doctrine of estoppel in a similar

situation did not apply, upon which case the decision here is largely predicated. It is, therefore, reasonable to conclude that the author himself considered the foregoing language as obiter dicta.

Accordingly, we rule that Calhoun County was not estopped to assert the unconstitutionality of the act, nor were they guilty of laches under Code § 37-119.

■ Early County asserts that, even though the act in question be unconstitutional, it should not be so declared, for the reason that both counties and the inhabitants of the territory in question, in assuming the act to be valid, have proceeded so far thereunder in establishing personal and property rights that the trouble and confusion incident to a readjustment thereof should overshadow and outweigh any defect in the constitutionality of the act.

Therefore, they insist that under these circumstances the doctrine of argumentum ab inconvenienti should be applied. Our attention is directed to the recent case of *Smith* v. *City Council of Augusta*, 203 *Ga.* 511 (3) (47 S. E. 2d, 582), where, though the doctrine was not applied, the cases of *Solomon* v. *Commissioners of Cartersville*, 41 *Ga.* 157, *Gormley* v. *Taylor*, 44 *Ga.* 76, and *Macon & Augusta R. Co.* v. *Little*, 45 *Ga.* 370, were cited. Without entering into an analysis of the extent, if any, to which this doctrine entered into and affected the decisions in those cases; and without seeking to draw any comparison between the conditions existing and the resulting consequences in the instant case, and those described in the latter two of the above cases, it is clear that this doctrine should not be here applied. The Constitution is the fundamental law, and where an act is clearly and plainly in violation thereof it is the duty of this court so to determine irrespective of the consequences. Where the constitutionality of an act is concerned, it is only when the question is close and doubtful that the doctrine of argumentum ab inconvenienti will be applied, and consideration be taken of consequences. As stated in the first division of this opinion, the act here in question is clearly and plainly in violation of the Constitution, and therefore this doctrine is not applicable.

*Judgment reversed. All the Justices concur.*