21890. STEWART, Member of State Board of Education, et al.
v. DAVIDSON, Member of DeKalb County
Board of Education, et al.

Submitted January 14, 1963—Decided April 4, 1963.

*Eugene Cook, Attorney General, Donald E. Payton, John Harrison, Assistant Attorneys General,* for plaintiffs in error.

*Murphy Candler, Jr., Thomas O. Davis,* contra.

*Latimer & Allen, A. C. Latimer, James P. Groton, Sutherland, Asbell & Brennan,* for parties at interest not parties to record.

DUCKWORTH, Chief Justice. ■ The Constitution, Art. VIII, Sec. V, Par. I (*Code Ann.* § 2-6801; Const. of 1945), in part provides that "Authority is granted to counties to establish and maintain public schools within their limits. Each county, exclusive of any independent school system now in existence in a county, shall compose one school district and shall be confined to the control and management of a County Board of Education." The legislature enacted a law with similar import (*Code* § 32-901) where it is said: "Each and every county shall compose one school district, and shall be confined to the control and management of a county board of education." See also *Code Ann.* § 32-1101 (Ga. L. 1946, p. 206). These laws are exhaustive as to who shall and must control and manage the schools of a county. The boards alone can receive and expend all school funds. The schools are entrusted to them, and them alone. A public office is a public trust. Fulfillment of the trust thus borne by the boards of education requires diligence and good faith not alone in making disbursement but also collection of all funds lawfully available to them. Since they alone have a lawful right to receive such funds, they alone are authorized to invoke legal process to compel payment of all funds due them under the law. To accomplish this they are empowered to maintain mandamus proceedings to require those holding funds belonging to them to pay those funds to the board. *Board of Educ. &c. for Bibb County v. State Bd. of Educ.*, 186 Ga. 200 (197 SE 261); *State Bd. of Educ. v. Board of Public Educ. of Savannah*, 186 Ga. 783 (199 SE 641).

Counsel for the defendants recognize this law and in their brief concede that this mandamus proceeding can be maintained to secure the performance by the defendants of their duty under Ga. L. 1949, p. 1406, to pay all funds to which they are entitled under that law, but they challenge the right of the petitioners to attack a portion of that law upon constitutional grounds and thus eliminate it. If the assailed portion of the law is valid, then petitioners can not prevail, but if it is unconstitutional, then they can prevail. The petition alleges and defendants admit, that by applying the clause under attack, DeKalb County will, for the year 1962-1963 lose $388,733, which it would receive if

treated as all counties are treated under the law. Thus is shown a requisite to the right to attack the law. *South Georgia Nat. Gas Co. v. Georgia Public Service Commission,* 214 Ga. 174 (104 SE2d 97). If the clause under attack is violative of the Constitution, it is by the Constitution itself, declared void by *Code Ann.* § 2-402 (Const. of 1945). The Supreme Court in Norton v. Shelby County, 118 US 425 (6 SC 112, 30 LE 178), gave a true description of an unconstitutional act as follows: "An unconstitutional act is not a law; it confers no rights; it imposes no duties; it affords no protection; it creates no office; it is, in legal contemplation, as inoperative as though it had never been passed." This court quoted this precise language with approval in *Holcombe v. Georgia Milk Confederation,* 188 Ga. 358, 363 (3 SE2d 705). Therefore, it follows that if the clause here assailed is unconstitutional, it is in legal contemplation as inoperative as though "it had never been passed." Also, "it affords no protection" to the defendants in withholding from the petitioners the full amount to which they are entitled under the law with the clause erased therefrom.

It is not a valid argument to contend that since petitioners are public officers of a subordinate unit of the State they can not attack this State law. The only requisite to the right to make the attack is a showing that it is hurtful to the attacker. *State Ports Authority v. Arnall,* 201 Ga. 713 (41 SE2d 246); *City of Moultrie v. Moultrie Banking Co.,* 175 Ga. 738 (165 SE 814); *Calhoun County v. Early County,* 205 Ga. 169 (52 SE2d 854); *Franklin v. Harper,* 205 Ga. 779 (55 SE2d 221); *State of Georgia v. Blasingame,* 212 Ga. 222 (91 SE2d 341); *Vandiver v. Williams,* 218 Ga. 60 (126 SE2d 210). It is admitted that this clause hurts petitioners in the combined amount of $388,733 for the school year 1962-63. It is further contended that since for a number of years this clause operated to the benefit of the petitioners and they never complained then, and further that they have accepted the money under the law, since it caused them a loss, they are estopped to now challenge its constitutionality. As seen above, when they were not hurt they could not attack it. Their acceptance of money thereunder when it caused them to sustain a loss does not prevent them from now seeking to have it declared

void and thereby avoid further loss. *Calhoun County v. Early County*, 205 Ga. 169 (2), supra.

Finally, counsel for parties at interest contend that if the clause of the act under attack is held unconstitutional, then the entire act must fail. When the act is examined, it is seen that it expressly declares the public policy of this State. It deals with every school district in the State. It provides for payments to all school districts by the State amounts necessary to supplement the amounts raised locally under a formula to bring them up to the amounts provided therein. Having done this, referring to all counties and districts, it finally inserts this clause making Fulton and DeKalb Counties a single unit. With this clause out, the general terms making each county and each independent school district a unit, will apply to Fulton and DeKalb Counties separately. Thus the obvious legislative intent and purpose is effectuated, and the act less this clause must be upheld. *Davis v. State*, 204 Ga. 467 (50 SE2d 604); *Gay v. Laurens County*, 213 Ga. 518 (100 SE2d 271). We therefore hold that the petitioners have the right to maintain this action.

■ We come now to the constitutional attacks made on the portion of Section 13 (c) which is as follows: "In determining the local financial ability of the counties of Fulton and DeKalb the economic index for the two counties shall be combined so long as the boundaries of the independent school system of Atlanta falls in both Fulton and DeKalb Counties." The solitary reason for this combination is the existence of the Atlanta school system with boundaries in both counties. It is obvious therefore that the legislature did not even think of the trade area, the economic condition, or any other conceivable reason for thus treating these counties differently from the other 157 counties except the historic fact that the Atlanta system lies in both counties. Remove this historic fact and regardless of the economic or other conditions the combination ceases. Standing as it must upon this single basis for denying uniformity in these counties, it has no legal basis for classification. *Tift v. Bush*, 209 Ga. 769 (75 SE2d 805); *Walden v. Owens*, 211 Ga. 884 (89 SE2d 492); *Hansell v. C. & S. Nat. Bank*, 213 Ga. 205 (98 SE2d 622); *City of Atlanta v. Gower*, 216 Ga. 368 (2) (116 SE2d 738).

In the *Hansell* case, supra, the last sentence of Section 3 of Ga. L. 1956, p. 309, was held to offend the constitutional provision invoked in this case (Constitution of 1945, Art. I, Sec. IV, Par. I; *Code Ann.* § 2-401), because there, a general law (Ga. L. 1927, p. 195) had covered the subject matter, and it was held that this one sentence of the 1956 act was a special law and offended the Constitution. However, it is essential to understand that the first sentence of *Code Ann.* § 2-401 is both positive and negative—positive in commanding that "Laws of a general nature shall have uniform operation throughout the State," and negative in forbidding a "special law . . . in any case for which provision has been made by an existing general law." Any act that offends either is void. *Code Ann.* § 2-402. The act involved in the *Hansell* case was a general law, and the portion thereof held to be unconstitutional was a departure from uniformity which is demanded by the Constitution just as strongly as special laws are forbidden where there is an existing general law. This court called the invalid portion a special law but it was in fact a part of a general law. That decision simply removed the malignant part of a general law to cause it to conform with the Constitution.

In *Hix v. Ramey*, 214 Ga. 464 (105 SE2d 452), we adjudicated an attack upon a proviso in Ga. L. 1952, pp. 400, 402, and held that it offended the uniformity clause of the Constitution. That act was an amendment of the act here involved (Education—Minimum Foundation Program Act of 1949). Much of the 1952 act was unchallenged, and was left standing after we struck down the proviso therein which appeared at the end of section 1 of the act, and which was: "Provided, however, notwithstanding any of the provisions of this Act to the contrary, that upon the passsage and approval of this Act, all school bus drivers employed by county boards of education, to drive school busses shall receive $25.00 per month for ten months each year in addition to their 1951-52 salary, and all contract school bus drivers, joint ownership or otherwise, shall receive $50.00 per month for ten months each year in addition to their 1951-52 contracts." The attack upon this proviso was that it is limited by its express terms to the bus drivers who had 1951-52 contracts and does not

apply uniformly to all persons coming within "the terms of the act, i. e., school bus drivers through the State transporting twelve or more school children, and, therefore, is violative of Art. I, Sec. IV, Par. I of the Constitution of 1945 (*Code Ann.* § 2-401)." In sustaining the attack, this court said: "there can be no reason for classifying school bus drivers because they had contracts for the year 1951-52, and making them come within the purview of an act because they had such contracts, and excluding from its provisions all other bus drivers who did not have contracts for that particular year. Such a classification is purely arbitrary, and the portion of the act demurred to is invalid *for the reasons urged.*" (Italics ours.) There the portion of the act assailed was held void because it offended the uniformity required of general laws by the constitutional provision invoked. In every material respect that case was identical with the instant case. There, the proviso was restricted to drivers of busses who had contracts for 1951-52, and did not apply uniformly to all persons coming under the act, i. e., school bus drivers throughout the State transporting twelve or more school children, and this rendered it unconstitutional. Here the clause in Section 13 (c) under attack does not apply uniformly to all school districts or counties throughout the State. Here, the act, *Code Ann.* § 32-601 (Ga. L. 1949, pp. 1406, 1408) plainly shows that the legislature intended that the law be a general one throughout the State in the following words: "It is hereby declared to be the public policy of the State of Georgia that educational opportunities *for all citizens of this State* shall be equalized *throughout the State* so as to establish, so far as possible, a minimum foundation program of education *in Georgia.*" (Italics ours.) This express legislative intention to embrace the entire State is too plain to be doubted. Likewise the legislative intent for *uniform* operation throughout the State as required by the Constitution (*Code Ann.* § 2-401) is manifested by declaring it to be *for all citizens,* and that it be "equalized throughout the State." Then the law spells out the entities that are to be dealt with under the law in *Code Ann.* § 32-604 (Ga. L. 1949, pp. 1406, 1409) as follows: "For the purposes of this act, the several counties of this State and the various independent school systems

established by law shall be the local units of administration." This includes all counties and independent school systems, thus securing uniformity as required by the Constitution. Again in *Code Ann.* § 32-615 (Ga. L. 1949, pp. 1406, 1413) it is provided that "The State Board of Education shall calculate annually the financial ability of *each local unit* of administration to support the minimum foundation program." (Italics ours.) It is wholly irrelevant to the question of the financial ability of the local unit, DeKalb County, to support the minimum foundation program, to calculate the financial ability of Fulton County to support the program. The clause which joins them does not purport to do so because they have joint obligations even in the support of the Atlanta school system, but it is done solely because the Atlanta system lies in both counties, and only so long as it continues to do so. Ga. L. 1949, pp. 1406, 1415 (*Code Ann.* § 32-616), provides that: "The amount of State-contributed foundation program funds which shall be alloted to each local unit . . . shall be the difference between the total calculated cost as determined in Section 12 of this Act [*Code Ann.* § 32-614] less the local ability of the unit to raise funds as determined in Section 13 [*Code Ann.* § 32-615]." The gross injustice to DeKalb County by treating it differently from 157 other counties by combining the economic index of Fulton and DeKalb Counties is shown by the admitted fact that it imposes a combined loss to the petitioners of $388,733 for the school year 1962-63, all of which they would receive if the economic index was arrived at in the same manner employed in the other 157 counties. To accomplish this hurtful result, the clause under attack arbitrarily, and without justification, destroys the uniformity essential to conformity with the constitutional requirement.

We therefore conclude that Ga. L. 1949, p. 1406, is a general law, and that portion of Section 13 (c) thereof which provides that: "In determining the local financial ability of the counties of Fulton and DeKalb the economic index for the two counties shall be combined so long as the boundaries of the independent school system of Atlanta falls in both Fulton and DeKalb Counties," offends the Constitution, Art. I, Sec. IV, Par. I (*Code Ann.* § 2-401; Const. of 1945) in that it destroys uniformity re-

quired of general laws as the Constitution demands. Since the intent of the legislature in adopting the law is fully covered by the remaining portions of the act, and the striking down of this invalid portion does not defeat the general purpose of the act, it will not nullify any other portion of the act. *Davis v. State,* 204 Ga. 467, supra; *Gay v. Laurens County,* 213 Ga. 518, supra. This general law is afflicted by the clause assailed which destroys uniformity which is an indispensable requisite of all general laws, and if allowed to remain it is a malignant appendage that will cause the death of the entire law, but by surgery the appendage can be removed and the life thereby saved. The medical profession would not hesitate to use surgery to remove a malignant growth that would, if allowed to remain, take the life of the patient. The legal profession must show the same wisdom as the medical profession and operate and save the life of the law.

It follows that the trial court did not err in overruling the demurrers. Nor was it error to grant the mandamus absolute as prayed.

*Judgment affirmed. All the Justices concur, except Almand and Mobley, JJ., who dissent from the ruling in Division 1, and from the judgment of affirmance.*

MOBLEY, Justice, dissenting. I dissent from Division 1 of the majority opinion because the members of the Boards of Education of DeKalb County and of the City of Decatur acting in their official capacities are without standing to raise the question whether or not the last sentence of Section 13 (c) of the Minimum Foundation Program of Education Act, Ga. L. 1949, pp. 1406, 1415 (*Code Ann.* § 32-615 (c)), violates Art. I, Sec. IV, Par. I of the Constitution (*Code Ann.* § 2-401).

"Before a statute can be attacked by anyone on the ground of its unconstitutionality, he must show that its enforcement is an infringement upon his right of person or property, and that such infringement results from the unconstitutional feature of the statute upon which he bases his attack." *South Georgia Nat. Gas Co. v. Georgia Public Service Commission,* 214 Ga. 174, 175 (1) (104 SE2d 97). In their original petition the members of the city and county boards did not allege that the operation of the last sentence of Section 13 (c) of the act injures their rights of

person or property, but alleged instead that "it affects the private rights of the citizens and taxpayers of Fulton and DeKalb Counties." By amendment they added that the sentence also operates "to the injury and damage of plaintiffs." It is upon these allegations of injury that plaintiffs' standing, or lack of standing, must be established.

Plaintiffs, acting in their official capacities as members of the city and county boards of education, are without standing to raise the constitutional question whether or not the last sentence of Section 13 (c) of the act "affects the private rights of the citizens and taxpayers of Fulton and DeKalb Counties." In *City of Chamblee v. Village of North Atlanta*, 217 Ga. 517, 520 (d) (123 SE2d 663), this court held as follows: "The rule is well established that in order to raise constitutional questions, a party must show not only that the alleged unconstitutional feature injures him and deprives him of a constitutional right but *he must also establish that he himself possessed the right allegedly violated.* He must be within the class of persons affected by the statute objected to.

"Chamblee, not possessing any such rights as it claims the above sections violate, does not have standing to raise these constitutional objections to the incorporation of North Atlanta. Any such rights were possessed, not by Chamblee, but by the private individuals who resided in the area . . ." (Emphasis added.) In *City of Macon v. Georgia Power Co.*, 171 Ga. 40, 47 (155 SE 34), this court held that the City of Macon had "no legal right to take up the contest in behalf of taxpayers generally and paving debtors; they are acquiescing in the taking of their property, and this is permissible even where there is a lack of due process of law." For other cases denying persons the right to challenge the constitutionality of acts of the General Assembly affecting the rights of others, see: *Reid v. Mayor &c. of Eatonton*, 80 Ga. 755 (1) (6 SE 602); *Hazleton v. City of Atlanta*, 147 Ga. 207, 208 (4) (93 SE 202); *Cooper v. Rollins*, 152 Ga. 588, 592 (5) (110 SE 726, 20 ALR 1105).

Plaintiffs also allege that the application of the provision under attack results in a reduction in allotments to plaintiffs of State-contributed funds "to the injury and damage of plain-

tiffs." I take this to be an allegation that the application of the provision under attack deprives plaintiffs in their official capacities as members of the city and county boards of education of public property due them in their official capacities as members of those boards. "Neither counties nor municipal corporations stand in the same position as individuals or private corporations, and *as against the State they do not own* the taxes collected by them and *public property held by them as if it were private property.*" (Emphasis added.) *Bibb County v. Hancock,* 211 Ga. 429, 440 (3) (86 SE2d 511). For this reason a county or city as to public property held by it is not entitled as against the State to equal protection of the law or to due process of law. *Ellington Co. v. City of Macon,* 177 Ga. 541 (1) (b), 544 (170 SE 813); *Bibb County v. Hancock,* 211 Ga. 429 (3a), supra. See *Hammond v. Clark,* 136 Ga. 313, 315 (11) (71 SE 479, 38 LRA (NS) 77).

The constitutional attack sustained by the majority is, of course, under the uniformity clause of the Constitution, Art. I, Sec. IV, Par. I *(Code Ann.* § 2-401), rather than under the due process or equal protection clauses thereof, but I am of the opinion that since plaintiffs would not in their official capacities have standing to urge either a due process or an equal protection attack against the last sentence of Section 13 (c) of the act, they are likewise barred from assailing that provision under the uniformity clause of the Constitution. In *Ledger-Enquirer Co. v. Brown,* 213 Ga. 538, 540 (100 SE2d 166), an act of the General Assembly was attacked under the uniformity clause, due process clause, and equal protection clause of the Constitution. The court treated the three attacks as one upon the theory that "The question involved in this case under each of the above provisions is one of classification." The court said further, "It is clear that the legislature may, for purposes of legislation, classify, and may legislate with respect to, each classification. The power of the legislature to classify for the purposes of legislation, however, is not without limitation. The classification must be natural and not arbitrary. It must have a reasonable relation to the subject matter of the legislation, and must furnish some legitimate ground for differentiation."

If, as the majority of this court agrees, the question presented by plaintiffs' constitutional attack under the uniformity clause is one of classification, and classification is the question presented by a constitutional attack under the due process and equal protection clauses as well as under the uniformity clause, and municipalities and counties are without standing to raise the question of classification under a due process or equal protection attack because as against the State they do not own the public property held by them as if it were private property, how then may the city and county boards of education in the case at bar raise the issue of unreasonable and arbitrary classification by invoking the uniformity clause of the Constitution when this court would be bound to deny their standing to attack Section 13 (c) of the act had they instead raised such question of classification by invoking either due process or equal protection?

I would hold that the members of the Boards of Education of the City of Decatur and of DeKalb County acting in their official capacities are without standing to raise the constitutional attack which the majority of this court has sustained in their favor because as against the State Board of Education they have no property right in the funds received by them from the State Board which is protected by the constitutional provision invoked.

I am authorized to state that Justice Almand concurs in this dissent.